COMMONWEALTH of Kentucky,
CORRECTIONS CABINET,
Appellant,

v.

Thomas B. VESTER and Wayne Vester, Administrators of the Estates of Buford Vester and Myrtle Vester, his wife, and The Kentucky Board of Claims, Appellees.

No. 95–SC–947–DG.

Supreme Court of Kentucky.

April 24, 1997.

As Modified on Denial of Rehearing
Nov. 20, 1997.

Mark A. Sipek, Frankfort, for appellant.

John O. Hardin, III, Hardin and Hardin, Hopkinsville, for appellees Wayne Vester and Thomas Vester.

COOPER, Justice.

On June 16, 1988, eight prisoners escaped from Three Cellhouse, the maximum security section of the Kentucky State Penitentiary in Eddyville, Kentucky. Three of the eight escaped prisoners, Billy Hall, Derrick Quintero and James Blanton, traveled together to Stewart County, Tennessee, fifty miles from the prison, where they brutally murdered Buford and Myrtle Vester. The death certificates listed the date of death for both victims as June 22, 1988, the date their bodies were found. Buford Vester was shot from an outside window. Myrtle Vester was shot once with a high powered rifle, was shot again at close range with a sawed-off shotgun, and was stabbed repeatedly in the neck and chest. Following a trial by jury, Hall, Quintero and Blanton were each found guilty of the murders of Buford and Myrtle Vester and sentenced to death.

Appellees, as administrators of the estates of Buford and Myrtle Vester, filed this action for damages in the Board of Claims. They assert that the deaths were caused by the negligence of the Corrections Cabinet and its employees in allowing the perpetrators to

escape from custody. Following an evidentiary hearing, the Board of Claims entered an order dismissing the claim. That order was affirmed by the Lyon Circuit Court. A divided Court of Appeals reversed and remanded with directions that the Board of Claims make findings with respect to the issue of damages and enter an award in accordance with those findings. We granted discretionary review to consider whether this case is controlled by our recent decision in *Fryman v. Harrison,* Ky., 896 S.W.2d 908 (1995). We now reverse the Court of Appeals and reinstate the judgment of the Lyon Circuit Court and the order of the Board of Claims.

Following the escape of the eight inmates, the Secretary of Corrections appointed a fact-finding team to review the factors which led to the escape, note any deficiencies, and recommend viable solutions. The report of the fact-finding team was issued July 5, 1988 and was entered into this record by stipulation. That report found that the escape resulted from the failure of prison employees to follow policies and procedures established by the Corrections Cabinet. Specifically, the investigation revealed a failure to detect door cuts, bending of security screens, and cuts to window frames and security grills. Further, inmates, in violation of regulations, were able to hide a forty foot electrical cord without being detected. The investigators also found a lack of supervision which resulted in jeopardizing the security of the institution, *viz:* many of the "inmate jailers" were inmates who had previously escaped or had attempted to escape. Finally, the inmates were left unsupervised for substantial periods of time. The report concluded: "In summary, the June 16, 1988 escape from the Kentucky State Penitentiary would not have occurred had the established policies and procedures been followed...."

■ The Board of Claims Act is a partial waiver of the Commonwealth's sovereign immunity, *University of Kentucky v. Guynn,* Ky., 372 S.W.2d 414 (1963), in order "to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employees...." KRS 44.070(1).

In the case at bar, the Board of Claims reached the following conclusion:

In this case, the Corrections Cabinet had a duty to maintain a prison facility to house dangerous criminals. Their failure and negligence resulted in an escape.

However, the Board of Claims also found that the Cabinet's negligence was not the proximate cause of the Vesters' deaths, but rather that the independent intentional acts of homicide perpetrated by the prisoners constituted an intervening superseding cause. *See generally NKC Hospitals, Inc. v. Anthony,* Ky.App., 849 S.W.2d 564 (1993). The Court of Appeals concluded that the undisputed findings of the Secretary's fact-finding team proved negligence on the part of the Cabinet, that homicidal acts by the escapees were foreseeable, and, thus the Cabinet's negligence was, as a matter of law, the proximate cause of the Vesters' deaths. The Court of Appeals interpreted *Fryman v. Harrison, supra,* as having merely addressed "the legal duty owed by officers and public employees of the Commonwealth and established under what circumstances such a duty arises." Opinion at pp. —————. Holding the Cabinet's failure to cross-appeal from the Board of Claims' implicit finding that it had a duty to the Vesters, albeit one which had been superseded by the intentional acts of the escapees, the Court of Appeals found that the Cabinet's duty was no longer an issue and that *Fryman* was thus "inapposite." We disagree and find that our opinion in *Fryman* controls the outcome of this case.

■ We find no support for a conclusion that the Cabinet's failure to cross-appeal from the Board of Claims' decision precludes it from now claiming that it owed no duty to the Vesters. The fact that the Board of Claims found for the Cabinet on the issue of superseding cause as opposed to the issue of absence of duty did not require the Cabinet to file a cross-appeal.[1] Where the prevailing

---

1. We note that *Fryman v. Harrison* was decided subsequent to the Board of Claims' decision in this case.

party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention. *Carrico v. City of Owensboro,* Ky., 511 S.W.2d 677 (1974); *cf. Uninsured Employers' Fund v. Brewster,* Ky., 818 S.W.2d 602 (1991). The Cabinet did assert to the Board of Claims that it owed no duty to protect the Vesters from harm perpetrated by the escaped prisoners.

In *Fryman v. Harrison, supra,* an inmate was released from the county jail despite the fact that he had not posted the required bond. After his release, the erstwhile prisoner assaulted an innocent victim. The victim then sued the jailer and the circuit clerk for their negligence in causing the prisoner to be released. While acknowledging the "universal duty of care" enunciated in *Grayson Fraternal Order of Eagles Aerie 3738 v. Claywell,* Ky., 736 S.W.2d 328 (1987), we held in *Fryman:*

> If the ultimate injuries were not foreseeable to the governmental officials in their individual capacity, and if the victim of the injury was not identifiable, there was no duty to prevent such an injury.

*Fryman, supra,* at 909. This was but a refinement of our holding in *Commonwealth, Department of Banking and Securities v. Brown,* Ky., 605 S.W.2d 497 (1980), that "the Commonwealth has no common law liability for the malfeasance of its agents in the performance of obligations running to the public as a whole." *Id.* at 500.

The dissenting opinion's reliance on *Watts v. K, S & H,* 957 S.W.2d 233 (Ky.1997) (not final as of this date) is misplaced. The defendant in *Watts* was not a public official acting in the performance of his official duties. "To establish a negligence claim against a public official, the complaint must allege a violation of a special duty owed to a specific identifiable person and not merely the breach of a general duty owed to the public at large." *Fryman v. Harrison, supra,* at 910. The same principle applies when the Commonwealth is sued in the Board of Claims for vicarious liability because of the negligence of public officials.

The Board of Claims Act does not create causes of action against the Commonwealth, but is only a waiver of the defense of sovereign immunity. *University of Kentucky v. Guynn, supra,* at 416. Any other defense which would have been available if the action could have been brought in the Board of Claims. 81A C.J.S. *States* § 282, p. 892.

In response to the assault victim's alternative argument in *Fryman* that a "special relationship" existed between him and the public officials in that case which imposed a special duty on those officials to protect him from the assault, we adopted the test enunciated in *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992) that a "special relationship" exists only when the victim is in state custody or is otherwise restrained by the state at the time in question. Since the victim (as opposed to the perpetrator) in *Fryman* was not in state custody, no "special relationship" existed. And since the victim of the injury was not readily identifiable to the governmental officials, they were under no duty to protect him from harm. "Public officials in an individual capacity or otherwise, cannot be expected to protect every individual whether known to them or not from any possible harm by third parties." *Fryman, supra,* at 909–10.

■ Although, as found by the Board of Claims, the Corrections Cabinet had a duty to prevent the escape of inmates from the Kentucky State Penitentiary, it did not owe a duty to Buford and Myrtle Vester to protect them from harm caused by the escapees. The Vesters lived fifty miles from Eddyville and their deaths occurred six days after the escape. Obviously, they were not readily identifiable as persons likely to be injured as a result of the escape; nor did a "special relationship" exist between them and the Cabinet which would impose upon the Cabinet a special duty to protect them, as opposed to the public as a whole, from harm. *Fryman, supra.*

For these reasons, we reverse the Court of Appeals and reinstate the judgment of the Lyon Circuit Court and the order of the Board of Claims which dismissed this action.

party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention. *Carrico v. City of Owensboro,* Ky., 511 S.W.2d 677 (1974); *cf. Uninsured Employers' Fund v. Brewster,* Ky., 818 S.W.2d 602 (1991). The Cabinet did assert to the Board of Claims that it owed no duty to protect the Vesters from harm perpetrated by the escaped prisoners.

In *Fryman v. Harrison, supra,* an inmate was released from the county jail despite the fact that he had not posted the required bond. After his release, the erstwhile prisoner assaulted an innocent victim. The victim then sued the jailer and the circuit clerk for their negligence in causing the prisoner to be released. While acknowledging the "universal duty of care" enunciated in *Grayson Fraternal Order of Eagles Aerie 3738 v. Claywell,* Ky., 736 S.W.2d 328 (1987), we held in *Fryman:*

> If the ultimate injuries were not foreseeable to the governmental officials in their individual capacity, and if the victim of the injury was not identifiable, there was no duty to prevent such an injury.

*Fryman, supra,* at 909. This was but a refinement of our holding in *Commonwealth, Department of Banking and Securities v. Brown,* Ky., 605 S.W.2d 497 (1980), that "the Commonwealth has no common law liability for the malfeasance of its agents in the performance of obligations running to the public as a whole." *Id.* at 500.

In response to the assault victim's alternative argument in *Fryman* that a "special relationship" existed between him and the public officials in that case which imposed a special duty on those officials to protect him from the assault, we adopted the test enunciated in *Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992) that a "special relationship" exists only when the victim is in state custody or is otherwise restrained by the state at the time in question. Since the victim (as opposed to the perpetrator) in *Fryman* was not in state custody, no "special relationship" existed. And since the victim

of the injury was not readily identifiable to the governmental officials, they were under no duty to protect him from harm. "Public officials in an individual capacity or otherwise, cannot be expected to protect every individual whether known to them or not from any possible harm by third parties." *Fryman, supra,* at 909–10.

The dissenting opinion's reliance on *Watts v. K, S & H,* 957 S.W.2d 233 (Ky.1997) (not final as of this date) is misplaced. The defendant in *Watts* was not a public official acting in the performance of his official duties. "To establish a negligence claim against a public official, the complaint must allege a violation of a special duty owed to a specific identifiable person and not merely the breach of a general duty owed to the public at large." *Fryman v. Harrison, supra,* at 910. The same principle applies when the Commonwealth is sued in the Board of Claims for vicarious liability because of the negligence of public officials. The Board of Claims Act does not create causes of action against the Commonwealth, but is only a waiver of the defense of sovereign immunity. *University of Kentucky v. Guynn, supra,* at 416. Any other defense which would have been available if the action could have been brought in circuit court is available in an action brought in the Board of Claims. 81A C.J.S. *States* § 282, p. 892.

Although, as found by the Board of Claims, the Corrections Cabinet had a duty to prevent the escape of inmates from the Kentucky State Penitentiary, it did not owe a duty to Buford and Myrtle Vester to protect them from harm caused by the escapees. The Vesters lived fifty miles from Eddyville and their deaths occurred six days after the escape. Obviously, they were not readily identifiable as persons likely to be injured as a result of the escape; nor did a "special relationship" exist between them and the Cabinet which would impose upon the Cabinet a special duty to protect them, as opposed to the public as a whole, from harm. *Fryman, supra.*

For these reasons, we reverse the Court of Appeals and reinstate the judgment of the Lyon Circuit Court and the order of the Board of Claims which dismissed this action.

STEPHENS, C.J., and JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., files a separate dissenting opinion in which GRAVES and STUMBO, JJ., join.

GRAVES, J., files a separate dissenting opinion in which LAMBERT and STUMBO, JJ., join.

LAMBERT, Justice, dissenting.

In this case, eight Kentucky State Penitentiary inmates escaped from Three Cell House. Three of the inmates murdered Mr. and Mrs. Vester. The Vesters' bodies were found six days after the escape, but their son had been unable to reach his parents during each of the two preceding days. Therefore, it is not clear that the murders occurred six days after the escape, a suggestion which has been broadly assumed to be true[1] and which appears to have influenced the decision-making. More probably, the murders occurred four days after the escape.

The Commonwealth's investigation revealed numerous security violations and concluded that the escape "would not have occurred had the established policies and procedures been followed." Three Cell House housed "the most dangerous inmates of the prison" and Hall, Quintero and Blanton were all serving long terms for having committed violent crimes. There is no doubt as to the negligence of the Commonwealth. The only issue is whether its negligence was the proximate cause of the Vesters' deaths. The majority has held that it was not.

On September 30, 1997, this Court rendered an opinion in *Watts, et al. v. K, S & H, a Partnership, et al.,* 957 S.W.2d 233 (Ky.

1997), a case in which the central issue was whether the evidence justified submitting the question of causation to the jury. In *Watts* one of the teenage boys had purchased beer and spirits which he shared with his friends, and a few hours later, two of them, while under the influence of alcohol, struck the Watts car grievously injuring a child. We held that it was not unforeseeable that one of a group of underage boys who purchased beer and rum on a school morning would share that pruchase with others and that one or more of the others would drive an automobile and cause a disastrous collision. We concluded the issue as follows: "this cause was properly submitted to the jury to determine whether Appellees violated their statutory duty and whether that violation led to a series of events that could have been foreseen." *Watts,* at 239. I am unable to harmonize the highly restrictive view of foreseeability and proximate cause in this case with our decision in the *Watts* case. If, as we have held, it was foreseeable in *Watts* that a disastrous collision would result from the illegal sale of alcoholic beverages to a teenager, it was virtually guaranteed that one or more of these eight prison escapees would rob and kill citizens in an effort to make good their escape.[2] Perceptively, the Court of Appeals concluded that "homicidal acts by the escapees were foreseeable and thus the Commonwealth's negligence was as a matter of law the proximate cause of the Vesters' deaths."

The majority opinion is flawed in its fealty to *Fryman v. Harrison,* Ky., 896 S.W.2d 908 (1995), as the cases ar too dissimilar to have one significantly influence the other. In

---

1. The relevant Board of Claims findings on this point are as follows:

   Plaintiff Wayne Vester testified at the hearing in regard to the murders of his parents. Wayne had visited his mother and father the weekend prior to their deaths, and had left them in good spirits on Sunday, June 19, 1988. Wayne stated he had tried to call his parents the next day, June 20, but was unable to reach them. He reasoned that they were either fishing or at the grocery store and he was not concerned. On Tuesday, June 21, when his father failed to keep an appointment, Wayne called but again received no answer. On Wed-

   nesday, June 22, Wayne finally reached a friend of the Vesters and asked him to check on them. Shortly thereafter, it was discovered that the couple had been murdered and Wayne was advised to return to the scene.

2. While drunken driving is a scourge, not all drunken drivers kill or maim themselves or others. Most do not. It would be far more probable that a high security classified escapee from a maximum security prison would commit a felony in the process of escape than that a drunken driver would crash his vehicle.

*Fryman,* the individual who was mistakenly released had been free on a $15,000 bond, apparently without incident, but was remanded to custody only because his parents sought and obtained release from the bond. The charge against the defendant was first degree assault and wanton endangerment against a woman and the person whom he ultimately assaulted was another man. The inmate mistakenly released in *Fryman* bears no resemblance to the eight Kentucky State Penitentiary Three Cell House escapees in this case. While it was not foreseeable that the defendant in *Fryman* would assault another, it was a certainty that the eight escapees, all classified as dangerous and serving long terms in prison, would commit whatever crimes they believed to be necessary to remain at large.

KRS 44.070(1) provides that under the Board of Claims Act, persons may be compensated "for damages sustained ... as a proximate result of negligence on the part of the Commonwealth." The Act makes no suggestion that the negligence standard under the Board of Claims Act is different than the standard which would apply in circuit court, but for sovereign immunity. *University of Kentucky v. Guynn,* Ky., 372 S.W.2d 414 (1963). There is no distinct brand of negligence and causation applicable to Board of Claims actions against the Commonwealth. When the claim is against the Commonwealth and is predicated on the only available theory of recovery under the Act, negligence and proximate cause, we should not impose an elevated standard of proof.

For these reasons, I dissent.

GRAVES and STUMBO, JJ., join this dissenting opinion.

GRAVES, Justice, dissenting.

I join in the dissent by Justice Lambert. I write this concurrence to his dissent to point out that under the egregious set of facts in this case, harm to innocent victims was just as foreseeable as if a starving man-eating tiger who had been released away from civilization would devour people within the near future. Indeed, there appears to be a double standard in assigning responsibility for negli-

gence when comparing the state to private interests.

LAMBERT and STUMBO, JJ., join this dissenting opinion.