Arles HALE; Clifford Wilson; and Glenna Bertram Appellants

v.

Alcie Ann COMBS; Thomas B. Gish; Joseph W. Kelly; Jeffery C. Mando; Helen Mount Joy; Margaret Pope; Martha Dell Sanders; Jane Adams Venters; and Dr. Wilmer S. Cody Appellees

No. 1999–SC–0273–DG.

Supreme Court of Kentucky.

Oct. 26, 2000.

John G. Prather, Jr., Winter Huff, Michelle Ross Altobella, Law Offices of John G. Prather, Somerset, for Appellants.

Robert E. Stopher, Robert D. Bobrow, Boehl, Stopher & Graves, Louisville, for Appellees Alcie Ann Combs; Thomas B. Gish; Joseph W. Kelly; Jeffery C. Mando; Helen Mount Joy; Margaret Pope; Martha Dell Sanders; and Jane Adams Venters.

Kevin M. Noland, Department of Education, Office of Legal Services, Frankfort, for Appellee Dr. Wilmer S. Cody.

COOPER, Justice.

By Order of May 20, 1997, the Kentucky Board of Education ("State Board"), comprised of Appellees Combs, Gish, Kelly, Mando, Mountjoy, Pope, Sanders and Venters, ousted Appellants Hale, Wilson and Bertram from their elected offices as members of the Russell County Board of Education ("County Board"). On judicial review pursuant to KRS 13B.140(1), the Russell Circuit Court entered a judgment vacating the order and restoring Appel-

lants to their elected offices. The Court of Appeals reversed and we granted discretionary review. We now reverse the Court of Appeals and reinstate the judgment of the Russell Circuit Court.

The Russell County Board's former superintendent of schools, Sovel Stephenson, retired effective August 1, 1995 and was replaced by Dr. Stephen Towler. Upon assuming office, Towler ascertained that the school district was being operated at a financial deficit and immediately notified the Department of Education of that fact. He also obtained a declaration of emergency from the County Board which was subsequently adopted by the State Board. KRS 160.550(1), *infra*. In September 1995, the State Board designated the Russell County School District a "certified district" pursuant to KRS 160.550(2), *infra*. This designation required Appellants to obtain prior written approval from the chief state school officer, Appellee Dr. Wilmer Cody, before expending or authorizing the expenditure of any school funds or "making" (sic) any employments, purchases or contracts. *Id*. During the period September 1995 through December 1996, the County Board expended or authorized expenditures of school district funds and entered into contracts without Dr. Cody's prior written approval.

In January 1997, Cody filed written charges with the State Board recommending that Appellants be removed from office on grounds of (1) incompetency, willful neglect of duty and nonfeasance per KRS 156.132(5) and (7); (2) knowingly authorizing expenditures in excess of the school district's income and revenue in violation of KRS 160.550(1), per KRS 160.990(4); and (3) expending or authorizing expenditures and/or entering into contracts without the prior written approval of the chief state school officer in violation of KRS 160.550(2), per KRS 160.990(4). The relevant statutory provisions are as follows:

**KRS 156.132. Removal or suspension of public school officers—Procedure, grounds, conditions.**

. . .

(5) [T]he chief state school officer may recommend by written charges the removal by the Kentucky Board of Education of any district board member, superintendent of schools, or other public school officer whom he has reason to believe is guilty of immorality, misconduct in office, incompetency, willful neglect of duty, or nonfeasance. . . .

. . .

(7) The Kentucky Board of Education may meet in closed session to consider the evidence and may by a majority vote remove the officer. If the board votes to remove the officer, the board shall prepare final order specifying which charge or charges it found to be the basis for removal. . . .

**KRS 160.550. Expenditure of funds in excess of income and revenue of any year.**

(1) *No superintendent* shall recommend and *no board member* shall *knowingly* vote for an expenditure in excess of the income and revenue of any year, as shown by the budget adopted by the board and approved by the Kentucky Board of Education, except for a purpose for which bonds have been voted or in case of an emergency declared by the Kentucky Board of Education.

(2) *Any school district* having authorized an expenditure in violation of subsection (1) of this section may be so certified at any time by the Kentucky Board of Education. *A district* so certified shall thereafter, any contrary statutory provisions notwithstanding, make no expenditure of money, give no authorization involving the expenditure of money, and make no employment, purchase, or contract, unless the chief state school officer has approved in writ-

ing, as fiscally sound and necessary, the expenditure, authorization, employment, purchase, or contract. *Any expenditure, authorization, employment, purchase, or contract made in violation of this subsection shall be void.*

. . .

(4) *In addition to the penalties set forth in KRS 160.990, any person who knowingly expends or authorizes the expenditure of school district funds or who knowingly authorizes or executes any employment, purchase, or contract, in violation of this section, shall be jointly and severably (sic) liable in person and upon any official bond he has given to such district to the extent of any payments on the void claim.* For purposes of this section, "knowingly" shall mean a person acts with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists.

(Emphasis added.)

**KRS 160.990. Penalties.**

. . .

(4) *Any person who violates any of the provisions of KRS 160 .550 shall be fined not less than fifty ($50) nor more than one hundred dollars ($100), and shall be subject to removal from office.* (Emphasis added.)

Following an evidentiary hearing, the State Board found Appellants not guilty of incompetence or willful neglect of duty, but guilty of nonfeasance, under KRS 156.132(5), and ordered Appellants removed from office pursuant to KRS 156.132(7). Guilt of nonfeasance was predicated upon Appellants' perceived failure to stay apprised of the district's financial condition per KRS 160.290(1), which requires each local school board to "have control and management of all school funds." Appellants asserted in defense to this charge that they made repeated requests of Dr. Towler for more detailed information concerning the school district's financial condition, but to no avail. Towler confirmed this fact, explaining that detailed information was unavailable during the period in question because of problems encountered in implementing the district's new MUNIS accounting system.

With respect to KRS 160.550, the State Board found that Appellants had not "knowingly" voted for an expenditure in excess of the district's income and revenue in violation of KRS 160.550(1), but that they had violated KRS 160.550(2) by "unknowingly" authorizing expenditures and contracts without the prior written approval of the chief state school officer; and ordered Appellants removed from office pursuant to KRS 160.990(4). Appellants had asserted in defense to this charge that Dr. Towler continually assured them that each and every expenditure authorized during the period in question had been pre-approved by Dr. Cody or his designee. Towler also confirmed this fact and testified that he believed that each expenditure had, indeed, been pre-approved by Dr. Cody or his designee, albeit the approvals were not in writing as required by KRS 160.550(2). Towler further asserted (and Randy Kimbrough, Deputy Commissioner for Management Support Services, confirmed) that it was not until December 1996 that Kimbrough informed Towler in writing that the process being used to obtain the approval of expenditures and contracts was unacceptable.

Thus, Appellants were not ousted from office because of incompetence, willful misconduct, or any knowing violations of KRS 160.550(2), but because of the perceived inadequacy of their efforts to apprise themselves of their district's financial condition and their unknowing violations of KRS 160.550(2). In other words, Appellants were ousted because they accepted their superintendent's explanations for providing incomplete financial information

and his technically inaccurate assurances of compliance with KRS 160.550(2).[1]

■ As previously noted, the Russell Circuit Court vacated the State Board's order *in toto* and entered judgment restoring Appellants to their elected offices. The Court of Appeals agreed with the Circuit Court that Appellants were not guilty of nonfeasance under KRS 156.132(5), concluding that Appellants' unsuccessful efforts to obtain more complete financial information were merely inadequate, whereas nonfeasance requires a complete absence of action. Since Appellees did not file a cross-motion for discretionary review with respect to this issue, the Court of Appeals' conclusion that there was insufficient evidence to support removal on grounds of nonfeasance is now the law of the case. CR 76.21; *Nelson Steel Corp. v. McDaniel*, Ky., 898 S.W.2d 66 (1995); *Green River Dist. Health Dep't v. Wigginton*, Ky., 764 S.W.2d 475 (1989), *overruled on other grounds, Withers v. University of Kentucky*, Ky., 939 S.W.2d 340 (1997).[2] However, the Court of Appeals held that Appellants were properly removed for violating KRS 160.550(2), noting that neither that statute nor KRS 160.990(4) requires proof of scienter as a prerequisite for removal. As will be further explained *infra*, we conclude that KRS 160.990(4) applies only to KRS 160.550(1) and (4), both of which do require proof of scienter.

■ First, however, we reject Appellants' argument that their removal is precluded by sections 150 and 151 of the Constitution of Kentucky. Those sections authorize removal only for, *inter alia*,

"corrupt practices," *i.e.*, intentional malfeasance. However, sections 150 and 151 are found within those constitutional provisions governing "Suffrage and Elections." Section 150 identifies those disqualified from holding office, and section 151 provides for the deprival of office from one who procured election thereto by fraud, intimidation, corrupt practices, or similar conduct. Furthermore, section 155 states:

The provisions of sections 145 to 154, inclusive, shall not apply to the election of school trustees and other common school district elections. Said elections shall be regulated by the General Assembly, except as otherwise provided by this Constitution.

The authority to determine who is eligible or ineligible to hold office as a local school board member is vested in the General Assembly. Ky. Const. § 183; *Rose v. Council for Better Educ., Inc.*, Ky., 790 S.W.2d 186 (1989).

The sole responsibility for providing the system of common schools is that of our General Assembly....

The General Assembly must not only establish the system, but it must monitor it on a continuing basis so that it will always be maintained in a constitutional manner. The General Assembly must carefully supervise it, so that there is no waste, no duplication, *no mismanagement*, at any level.

*Rose*, 790 S.W.2d at 211 (emphasis added).

■ Thus, the General Assembly did not act in excess of its authority by enacting legislation empowering the Kentucky School Board to remove county school board members for causes not enumerated

1. Ironically, during an August 1996 meeting with Deputy Commissioner Randy Kimbrough and Associate Commissioner for District Support Services Thomas Willis, Appellants inquired as to how they could avoid similar problems in the future and were advised to "trust your superintendent."

2. Appellees' reliance on *Commonwealth v. Vester*, Ky., 956 S.W.2d 204 (1997) with respect to this issue is misplaced. *Vester* holds

that the prevailing party need not file a cross-appeal in order to assert that the lower court (or administrative agency) reached the right result for the wrong reason. *Id.* at 205–06. Here, Appellees did not prevail in the Court of Appeals on the issue of nonfeasance, thus were required to file a cross-motion for discretionary review in order to assert that the lower court reached the wrong result on that issue.

in the Constitution. That having been said, however, we conclude that KRS 160.550(2), the "prior written approval" statute, does not provide an independent basis for removing school board members from office under KRS 160.990(4).

 The essence of statutory construction is to ascertain and give effect to the intent of the legislature. "We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Educ. of Jefferson County*, Ky., 873 S.W.2d 575, 577 (1994).

> To determine legislative intent, a court must refer to "the words used in enacting the statute rather than surmising what may have been intended but was not expressed." ... Similarly, a court "may not interpret a statute at variance with its stated language."

*Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998) (citations omitted).

 KRS 160.550(2) specifically proscribes conduct only by "[a]ny school district" and provides its own remedy, *i.e.*, "any expenditure, authorization, employment, purchase, or contract made in violation of this subsection shall be void." On the other hand, KRS 160.550(1) specifically proscribes conduct by a "superintendent" or a "board member," and KRS 160.550(4) specifically proscribes conduct by "any person," which would include a superintendent or board member, but not a school district. Subsections (1) and (4) both require that the conduct proscribed therein be "knowingly" committed. Subsection (4) defines "knowingly" and subjects "any person" who knowingly engages in the conduct proscribed by KRS 160.550(2) to both civil liability and the punitive sanctions described in KRS 160.990(4). The language of KRS 160.990(4) specifically limits its application to "[a]ny person;" thus, it applies certainly to the conduct proscribed by KRS 160.550(4), *i.e.*, a "knowing" violation of KRS 160.550(2), and inferentially to the conduct proscribed by KRS 160.550(1),

*i.e.*, a knowing vote for an expenditure in excess of the district's income and revenues. However, it cannot apply to an "unknowing" violation of KRS 160.550(2), because the language of that statute limits its application only to school districts, which are not "person[s]," but "bod[ies] politic and corporate." KRS 160.160(1); *City of Bowling Green v. Board of Educ.*, Ky., 443 S.W.2d 243, 245 (1969). Nor are school board members liable *per se* for actions attributable to a school district as a body politic and corporate.

> We think it does not follow, however, from the fact that a board as a body has acted arbitrarily and in excess of its power, that any particular member or .. 'ers of the board have individually been guilty of immorality, misconduct in office, incompetency or willful neglect of duty. There was no determination in the Wooley case [*Wooley v. Spalding*, Ky., 293 S.W.2d 563 (1956) ] of individual responsibility of the various board members for the action taken by the corporate body.

*Hogan v. Kentucky State Bd. of Educ.*, Ky., 329 S.W.2d 563, 565 (1959). We attribute no significance to the absence of the requirement of scienter from KRS 160.550(2) other than the fact that mens rea is a state of mind possessed by persons, not by bodies politic and corporate.

 In summary, a violation of KRS 160.550(1), *i.e.*, a recommendation by a superintendent or a *knowing* vote by a board member for an expenditure in excess of a school district's income and revenue, authorizes the State Board to designate that district as a "certified district" subject to the requirements of KRS 160.550(2). It also authorizes imposition of the sanctions described in KRS 160.990(4). KRS 160.550(2) sets forth the requirements imposed upon a "certified district" and contains its own remedy, *i.e.*, that any expenditure, authorization, employment, purchase, or contract made in violation of those requirements is void. If

a district is designated a "certified district" under KRS 160.550(2), KRS 160.550(4) subjects "any person" who "knowingly" engages in conduct proscribed by subsection (2) to both civil liability and the punitive sanctions described in KRS 160.990(4). However, the statutory scheme does not subject any person to any sanctions for "unknowingly" engaging in the conduct proscribed by KRS 160.550(2); and that, according to the order of the State Board, is what occurred in this case.

Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Russell Circuit Court.

LAMBERT, C.J., GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., concurs in result only without separate opinion.