Adolph PETZOLD, et al., Appellants,

v.

KESSLER HOMES, INC., Appellee.

No. 2008–SC–000106–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

William W. Allen, Lori Beth Shelburne, Gess, Mattingly & Atchison, PSC, Lexington, KY, Counsel for Appellant.

Albert F. Grasch, Jr., Grasch & Cowen, PSC, Lexington, KY, Counsel for Appellee.

Opinion of the Court by Justice
VENTERS.

Appellants, Adolph and Marilyn Petzold, appeal from a decision of the Court of Appeals vacating a judgment of the Fayette Circuit Court against Appellee, Kessler Homes, Inc. (Kessler), on the grounds that the presiding Judge, Pamela Goodwine, was retroactively disqualified from presiding over the proceedings because the Petzolds are the parents of Judge Goodwine's campaign treasurer in her 2003 campaign run for the circuit court bench. It is undisputed that Judge Goodwine was unaware of the association during the period she presided over the case. We granted discretionary review.

Because we conclude that the lower court erred in its determination that Judge Goodwine was retroactively disqualified, we reverse and remand the cause to the

Court of Appeals for consideration upon the merits of the issues left unaddressed by the court because of its disposition.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2000, the Petzolds and Kessler entered into a contract for the construction of a residence. Toward the end of the construction project, disputes arose between the parties concerning the quality of the work and Kessler's billing practices. In light of the disagreements, the Petzolds refused to pay Kessler. The efforts of the parties to resolve their differences failed.

On October 14, 2002, Kessler filed suit against the Petzolds in Fayette Circuit Court seeking amounts it believed were owed by the Petzolds under the contract. The Petzolds filed a counterclaim asserting various causes of action relating to fraud, violations of the applicable building codes, and violations of Kentucky's Consumer Protection Act. Protracted litigation followed. The parties waived their respective rights to a jury trial, and a four-day bench trial was held from August 29, 2005, to September 1, 2005, presided over by Judge Goodwine.

On February 3, 2006, Judge Goodwine entered an opinion, order, and judgment. The judgment dismissed Kessler's claims against the Petzolds; awarded the Petzolds $21,668.00 upon their claim for building code violations; awarded the Petzolds $8,466.00 upon a finding that Kessler breached its duty of good faith and fair dealing, but dismissed the underlying fraud claim; dismissed the Petzolds claims for damages for other construction defects,

for violation of the Consumer Protection Act, and for the loss of the use and enjoyment of their residence; and found that the Petzolds were entitled to recover their attorney fees and expenses, expert fees and expenses, and costs.

Both parties thereafter filed motions to alter, amend, or vacate. On May 2, 2006, the trial court entered an order denying Kessler's motion to amend, sustaining the Petzolds' motion to amend, and finalizing the award of $106,024.59 for attorney fees and expenses and $5,367.60 for expert fees.[1] Both parties appealed the trial court's rulings to the Court of Appeals.

While the appeals were pending, Kessler learned that Judge Goodwine's campaign treasurer during her 2003 run for the Fayette Circuit Court bench, Lisa Petzold Castle, was the Petzolds' daughter. Concerned that this association undermined the fairness of the proceedings, on August 18, 2006, Kessler filed a CR 60.02 motion asking that Judge Goodwine's orders of February 3 and May 2, 2006, be set aside. Kessler did not allege that Judge Goodwine had actual knowledge of the association, but requested that "[a]t minimum, [Kessler] requests the right to take discovery on the relationship between Your Honor and the Petzolds."[2]

Following a hearing, on September 7, 2006, Judge Goodwine denied the motion. In the order, Judge Goodwine stated that she did not know of the relationship during the pendency of the proceedings and thus could not have been influenced thereby; that under the circumstances at bar, even if she had known of the association she would not have been under an obligation to

1. Among the issues on the merits is the trial court's basis for awarding these fees and expenses. Kessler argues that there is no statutory basis for the fees, and that the parties' contract contained no provision for the payment of same by the non-prevailing party.

The trial court's orders do not identify the basis for the award.

2. Formal discovery upon the issue was not conducted.

recuse herself; but had the association come to light sooner, upon proper motion she would have recused herself. Judge Goodwine further concluded that the applicable Judicial Canons and ethical rules did not require her to retroactively recuse herself from the proceedings or to set aside her previous rulings in the case.

In her order Judge Goodwine provided the following narrative explaining her recollection and understanding of the facts underlying the situation:

1. Ms. Castle became this Court's[3] personal certified public accountant in the fall of 2000 or early spring of 2001 by default. Prior to that time, Richard Bass, C.P.A., of Hisle & Company, was this Court's personal certified public accountant and financial planner.

2. In the summer or fall of 2000, Mr. Bass left Hisle & Company and joined the firm where Ms. Castle worked. This Court is not certain what type of business or employment relationship existed between Mr. Bass and Ms. Castle. returns. The accountant turned out to be Lisa P. Castle. The Court did not know Ms. Castle prior to that meeting.

3. In late 2000 or early 2001, Mr. Bass left the practice of accountancy. As a courtesy to this Court as a client, he notified this Court of his intent to leave the practice to care for his ailing mother on a full-time basis.

4. Mr. Bass gave this Court the option of requesting my personal tax files or leaving them with the company. This Court chose to leave my files with the company to be handled by one of the other certified public accountants in the office.

5. In early 2001, when it came time to prepare my 2000 tax returns, this Court made an appointment with one of the accountants in the office to discuss the preparation of said returns. The accountant turned out to be Lisa P. Castle. The Court did not know Ms. Castle prior to that meeting.

6. The meeting was professional and cordial. At no time did this Court and Ms. Castle discuss anything other than business relating to the preparation of my tax returns.

7. The Court was satisfied with Ms. Castle's services as well as the services of her associates and chose to have Ms. Castle continue to serve as her certified public accountant and financial planner.

8. In August of 2003 when this Court decided to seek the Office of Circuit Judge, I discussed a committee with my husband and closest advisors. We decided that my campaign treasurer should be a certified public accountant rather than a personal friend. I called Ms. Castle to see if she was interested in serving in that capacity. She agreed to serve. She signed the campaign checks and completed and signed the campaign finance reports. Her services were reported as an in-kind contribution.

Kessler does not dispute Judge Goodwine's version of events, and makes no contention that she had actual knowledge that her campaign treasurer was the Petzolds' daughter at the time she presided over the proceedings.

Kessler appealed the denial of its CR 60.02 motion to the Court of Appeals, where it was consolidated with the pending appeal and cross-appeal. On January 18, 2008, the Court of Appeals rendered an opinion vacating the trial court's judgment in the case on the grounds that "there can be no question that the rule against appearance of impartiality has been violated." Because of its disposition of that

---

**3.** The references to "this Court" are, of course, references to Judge Goodwine herself.

issue, the Court of Appeals did not address the remaining issues raised by Kessler's appeal and by the Petzolds' cross-appeal. The Petzolds petitioned for discretionary review of the decision. Kessler, however, did not file a protective cross-petition for review.

For the reasons set forth herein, we reverse the Court of Appeals, and remand for its consideration of the unaddressed issues raised by the parties in their respective appeal and cross-appeal.

## I. KENTUCKY LAW DOES NOT RE-QUIRE THE RETROACTIVE DIS-QUALIFICATION OF JUDGE GOODWINE

■ The Petzolds contend that the Court of Appeals erred when it determined that Judge Goodwine should have retroactively recused once she became aware of the relationship between the Petzolds and her campaign treasurer and, correspondingly, granted Kessler's motion for CR 60.02 relief. We address the argument under the premise that Judge Goodwine did not know of the relationship throughout the course of the original proceedings, that is, until Kessler's motion for post-judgment relief, because that fact is undisputed.

We begin with the relevant provisions of the general Judicial Canon addressing the disqualification of a judge, Canon 3E of the Judicial Code of Conduct, which is codified in SCR 4.300 E(1):

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

■ Similarly, KRS 26A.015(2)(a) mandates that a judge recuse if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding." The statute also requires recusal if the judge "has knowledge of any other circumstances in which his impartiality might reasonably be questioned." KRS 26A.015(2)(e). Thus, "[u]nder both the statute and the Canon, recusal is proper if a judge determines that 'his impartiality might reasonably be questioned;' in fact, it is mandatory." *Jacobs v. Commonwealth*, 947 S.W.2d 416, 417 (Ky.App.1997). Furthermore, "there is always the higher consideration that every litigant is entitled to 'nothing less than the cold neutrality of an impartial judge' and should be able to feel that his cause has been tried by a judge who is Vholly free, disinterested, impartial and independent.'" *Dotson v. Burchett*, 301 Ky. 28, 34, 190 S.W.2d 697, 700 (1945).

■ Both the statute and the judicial canons, however, look prospectively at recusal to guide judges and litigants with regard to ongoing or future proceedings. The leading case addressing the issue of retroactive recusal is the United States Supreme Court decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The Court of Appeals relied heavily on the case in its decision, and both parties argue that the recusal principles described therein support their respective positions. While there are substantial differences between the operative facts in *Liljeberg* and the case at bar, we find the decision to be instructive, and adopt the basic retroactive recusal principles described in the opinion.

In *Liljeberg*, the United States Supreme Court considered the federal judicial dis-

qualification statute,[4] similar to KRS 26A.015. In that case, a United States District Judge was assigned to preside over a case in which Loyola University had a pecuniary interest. At the time of the litigation, and for sometime prior to that, the judge served on Loyola's Board of Trustees. *Id.* at 850, 108 S.Ct. 2194. Two days before the filing of the lawsuit, the judge attended a Board meeting during which the subject of the litigation was discussed.

Following a bench trial, the judge entered a judgment favorable to Loyola's interest. In so doing, he credited Mr. Liljeberg's testimony, which was favorable to Loyola, over considerable evidence to the contrary. The judge issued his ruling, and eight days later received in the mail a copy of minutes of a Loyola Board meeting (which he had not attended) discussing the litigation. Thus, during the period preceding finality of the judgment, the judge again received actual notice of Loyola's involvement with the litigation. He nevertheless did not disclose the conflict, and his judgment became final.

Ten months later, the unsuccessful party learned of the judge's involvement with Loyola and filed the federal equivalent of a CR 60.02 motion[5] seeking that the judge retroactively recuse from the case and that his rulings be vacated. *Liljeberg,* 486 U.S. at 850, 108 S.Ct. 2194. The judge denied the motion.

In *Liljeberg,* the United States Supreme Court held that the judge was retroactively disqualified, setting forth the following interpretations and standards relevant to our review:

> Scienter is not an element of a violation of § 455(a). The judge's lack of knowledge of a disqualifying circumstance

may bear on the question of remedy, but it does not eliminate the risk that "his impartiality might reasonably be questioned" by other persons. To read § 455(a) to provide that the judge must know of the disqualifying facts, requires not simply ignoring the language of the provision-which makes no mention of knowledge-but further requires concluding that the language in subsection (b)(4)-which expressly provides that the judge must know of his or her interest-is extraneous. A careful reading of the respective subsections makes clear that Congress intended to require knowledge under subsection (b)(4) and not to require knowledge under subsection (a). Moreover, *advancement of the purpose of the provision—to promote public confidence in the integrity of the judicial process,* see S.Rep. No. 93–419, p. 5 (1973); H.R.Rep. No. 93–1453, p. 5 (1974) [U.S.Code Cong. & Admin.News 1974, p. 6351]—*does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew.* As Chief Judge Clark of the Court of Appeals explained:

> "The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not

---

**4.** 28 U.S.C. § 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceed-

ing in which his impartiality might reasonably be questioned."

**5.** *See* Federal Rules of Civil Procedure 60(b).

the sort of objectively ascertainable fact that can avoid the appearance of partiality. *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983). Under section 455(a), *therefore, recusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge.*" [*Health Services Acquisition Corp. v. Liljeberg*] 796 F.2d, [796] at 802 [ (5th Cir. 1986) ].

*Id.* at 860–861, 108 S.Ct. 2194 (Emphasis added) (Footnote omitted).

█ Thus, the relevant inquiry is whether a reasonable person with knowledge of all of the relevant circumstances relating to the unknown conflict would expect the judge to have actual knowledge of the claimed conflicting interest or bias.

At first blush, one might reasonably think it is inherently unfair for a judge to preside over a case involving the parents of her campaign treasurer and personal accountant. However, the test cited above stipulates "knowing all the circumstances." The circumstances here include the highly impersonal relationship between Judge Goodwine and Castle, and the manner in which Castle came to be the judge's campaign treasurer. From the undisputed facts, it is evident that Castle was not within the inner-circle of Judge Goodwine's political advisors, as the term "campaign treasurer" may suggest. She did not participate in campaign planning and strategy. Rather, Castle became Judge Goodwine's accountant by happenstance when Goodwine's previous accountant ceased practicing. Castle became the campaign treasurer for the practical reason that Judge Good-

Goodwine wanted a competent, professional accountant to serve as treasurer instead of a member of her political team. Castle was not a social acquaintance of Judge Goodwine. The only prior relationship between Judge Goodwine and Ms. Castle was as accountant-client.

Unlike *Liljeberg*, where the judge's denial of knowledge of Loyola's interest in the litigation was almost incredulous, Judge Goodwine's lack of knowledge is most plausible.[6] When knowledge of the stipulation that Judge Goodwine was unaware of the parent-daughter relationship is imputed to the objective observer, any appearance of bias or partiality is removed. Moreover, an objective observer would not reasonably assume that the judge knew that a parent-daughter relationship existed between her campaign treasurer/accountant, Lisa Castle, and the Petzolds.

█ Even where an actual disqualifying condition is discovered after entry of judgment, it does not follow automatically that the judgment must be vacated. *Liljeberg*, applying the federal counterpart of CR 60.02, established a three part test to address the issue of when the vacating of a judgment is compelled for violation of the appearance of impartiality stricture. The Court stated:

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. We must continuously bear in mind that "to perform its high function in the best way justice must satisfy the appearance of justice.'"

**6.** We acknowledge here that a factor in the analysis must take into account the community in which the judge serves. Judge Good-

wine serves in Lexington, one of Kentucky's larger urban areas.

*Liljeberg,* 486 U.S. at 864, 108 S.Ct. 2194 (citation omitted)

We consider the United States Supreme Court's analysis of the issue to be sound, and because Kentucky's Court of Justice and the federal court system share virtually identical standards of judicial conduct regarding disqualification and recusal, with nearly identical civil rules for vacating judgments, we hold that the same standard should guide Kentucky courts in determining whether a judgment should be vacated as a result of a violation of SCR 4.300 E(1) or KRS 26A.015. Applying those standards to the facts of this case would not lead to a decision to vacate the judgment. Because all agree that Judge Goodwine did not know of the relationship while she presided over the case, there is no risk of injustice to Kessler. She could not have been actually biased by facts that were not known to her. Second, there is no risk that denial of relief to Kessler will produce an injustice in other cases because the situation is unique to this case.[7] Lastly, there is no risk of undermining the public's confidence in the judicial process because, as explained above, a reasonable observer fully informed of the circumstances would not reasonably expect that Judge Goodwine knew of the parent-daughter relationship.

In summary, for the reasons stated above, the Court of Appeals erred in its conclusion that Kessler was entitled to relief under CR 60.02. Accordingly, we reverse.

## II. WE NEED NOT ADDRESS THE MERITS OF THE PETZOLDS' CLAIM THAT EVEN IF JUDGE GOODWINE KNEW OF THE RELATIONSHIP SHE WAS UNDER NO OBLIGATION TO RECUSE

The Petzolds contend that Judge Goodwine would not have been bound to recuse herself from presiding in this case even if she had known that her accountant and campaign treasurer was the daughter of litigants in her court. Since the underlying premise of this argument (the assumption that Judge Goodwine knew of the relationship) is at odds with the acknowledged facts of this case, we decline to express an opinion on whether Judge Goodwine should have recused herself if, prior to the entry of judgment, she had become aware of the potential conflict. The resolution of that issue is best left to an occasion when the facts mirror the question. We note, however, that in her Order of September 7, 2006, Judge Goodwine stated that if she had known of the relationship, on proper motion she would have recused.

## III. KESSLER'S FAILURE TO FILE A CROSS–PETITION FOR DISCRETIONARY REVIEW DOES NOT BAR REMAND FOR CONSIDERATION OF ISSUES PRESENTED TO, BUT NOT ADDRESSED BY, THE COURT OF APPEALS

On appeal to the Court of Appeals, in addition to the argument that Judge Goodwine should be retroactively recused, Kessler argued that Judge Goodwine had abused her discretion in several instances, including the award of attorney's fees to the Petzolds, the dismissal of Kessler's accounting claims, the finding that Kessler breached a duty of a good faith and fair dealing, and the admission of expert testimony. Kessler, completely satisfied with the Court of Appeals' decision to vacate the judgment in its entirety and remand for a new trial with a new judge, did not present those issues to this Court in the form of a protective cross-petition for discretionary review as allowed by CR 76.21.[8]

---

**7.** Judge Goodwine has already committed, upon proper motion, to recuse in the event the Petzolds appear before her in further litigation.

**8.** CR 76.21(1) provides as follows: "If a motion for discretionary review is granted, the

The Petzolds argue that under CR 76.21(1) Kessler's failure to file a protective cross-petition forecloses any further litigation on the issues raised in the original appeal to the Court of Appeals, but which that court declined to address. Those issues, the Petzolds contend, must be treated as resolved in their favor. In the Petzolds' view, their success in that Court on the recusal issue ends the litigation, and the trial court's judgment must be reinstated without further delay. Resolution of the unraised issues by this Court, or by the Court of Appeals on remand, they assert, is impermissible under our prior decisions.

The Petzolds cite *Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920 (Ky. 2007), which follows a line of authority that begins with *Commonwealth, Transportation Cabinet Department of Highways v. Taub,* 766 S.W.2d 49 (Ky.1988). *Taub* afforded this Court its first opportunity to interpret and apply CR 76.21, which became effective January 1, 1986, and sets forth the following rule:

> We will not address issues raised but not decided by the Court below. It is the rule in this jurisdiction that issues raised on appeal [in the Court of Appeals] but not decided will be treated as settled against the [prevailing party] in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review. CR 76.21(1); *Nashville, C. & [St. L.] R.R. Ry.Co. v. Banks,* 168 Ky. 579, 182 S.W. 660 (1916); and *Eagle Fluorspar Co. v.*

*Larue,* 237 Ky. 263, 35 S.W.2d 303 (1931).

*Id.* at 51–52.

*Perry v. Williamson,* 824 S.W.2d 869 (Ky.1992), expanded upon the idea and set forth this version of the rule:

> Our rules are specific that if the motion for discretionary review made by the losing party in the Court of Appeals is granted, it is then incumbent upon the prevailing party in the Court of Appeals to file a cross-motion for discretionary review if respondent wishes to preserve the right to argue issues which respondent lost in the Court of Appeals, or issues the Court of Appeals decided not to address. If the party prevailing in the Court of Appeals wishes further consideration of such issues along with the issues for which discretionary review has been granted, the prevailing party must file a cross motion for discretionary review. CR 76.21; *Green River Dist. Health Dept. v. Wigginton,* Ky., 764 S.W.2d 475 (1989); *Comm. Transportation Cabinet Dept. of Highways v. Taub,* Ky., 766 S.W.2d 49 (1988).

*Id.* at 871.

Kessler, on the other hand, relies upon the line of authority following *Commonwealth, Corrections Cabinet v. Vester,* 956 S.W.2d 204 (Ky.1997)[9], for the proposition that a prevailing party need not file a cross-appeal (and, by implication, a cross-petition for discretionary review)[10] in or-

---

respondent shall then be permitted ten days thereafter in which to file a cross motion for discretionary review designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case."

9. Kessler cited directly *Hale v. Combs,* 30 S.W.3d 146, 150 (Ky.2000), which addresses the *Vester* rule in a footnote.

10. The civil rule addressing cross-appeals is contained in CR 74.01. The rule does not contain language analogous to the CR 76.21(1) language "designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case."

der to assert that the lower court reached the correct result for the reasons it stated, or for any other reasons appropriately brought to its attention. *Id.* at 206. Kessler argues that the issues it failed to assert by cross-petition are merely alternative grounds by which we may conclude that the Court of Appeals reached the correct result, that is, the vacating of Judge Goodwine's rulings.

*Vester* involved a wrongful death negligence complaint against the Corrections Cabinet in the Board of Claims for two homicides committed by escaped prisoners. Although the Board found that the Corrections Cabinet had breached its duty to maintain a prison facility to house dangerous criminals, *id.* at 205, the claim was dismissed on the grounds that the Cabinet's negligence was not the proximate cause of the deaths. Vester appealed the ruling to the Circuit Court, which affirmed. The Cabinet filed no cross-appeal from the Board of Claims' implicit finding that it had a duty to the victims, albeit a duty that had been superseded by the intentional acts of the escapees. Vester appealed to the Court of Appeals, which reversed on the issue of causation and remanded for the entry of an award of damages. The Court of Appeals held the Cabinet's failure to cross-appeal foreclosed further appellate review of the issue of its duty to the victims. On discretionary review, this Court held:

> We find no support for a conclusion that the Cabinet's failure to cross-appeal from the Board of Claims' decision precludes it from now claiming that it owed no duty to the [victims]. The fact that the Board of Claims found for the Cabinet on the issue of superseding cause as

opposed to the issue of absence of duty did not require the Cabinet to file a cross-appeal. Where the prevailing party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention. *Carrico v. City of Owensboro,* Ky., 511 S.W.2d 677 (1974); cf. *Uninsured Employers' Fund v. Brewster,* Ky., 818 S.W.2d 602 (1991). The Cabinet did assert to the Board of Claims that it owed no duty to protect the Vesters from harm perpetrated by the escaped prisoners.

*Id.* at 205–206 (Footnote omitted).

Thus, we held in *Vester* that a cross-appeal was not required in order to permit a party prevailing in a lower tribunal to argue on appeal that the tribunal reached the correct result, albeit for reasons other than those stated. It should be noted that *Vester* was not a CR 76.21 case.[11] *Vester* would otherwise be distinguishable on that basis but for our incorporation of the principle into CR 76.21 in *Steel Technologies,* 234 S.W.3d 920. There, the Court of Appeals had affirmed a damage award against Steel Technologies. Discretionary review was sought and granted on the issue of sufficiency of the evidence. Congleton, the prevailing party in the Court of Appeals, filed no cross-petition but did argue that the claims of error relating to the sufficiency of the evidence were not properly preserved for appellate review because no motion for a directed verdict had been made at trial. Congleton made similar arguments before the trial court and

---

11. We note that the principal case relied upon in *Vester, Carrico v. City of Owensboro,* was a pre-CR 76.21 case decided by our predecessor court. The trial court determined that Carrico had standing but decided for Owensboro on other grounds. In its appellate brief, Ow-

ensboro argued standing and Carrico argued that the issue could not be raised because Owensboro did not file a cross-appeal. Our predecessor Court determined that Owensboro could raise the issue though no cross-appeal was filed.

the Court of Appeals. In this Court, Steel Technologies argued that Congleton was barred from raising the preservation issue because the Court of Appeals had implicitly decided the matter against him by not addressing it, and he had not kept the issue alive with a cross-motion for discretionary review.

■ In holding that Congleton's issue could be argued, we first noted the cross-petition rules as stated in *Taub* and *Perry*. While those decisions support the rule barring review of issues not raised in a cross-petition, we avoided applying the rule, stating as follows:

> Steel Technologies' argument, however, incorrectly assumes that preservation of an error [in the trial court] is a separate issue from the claim of error itself. Rather, preservation is simply one aspect of Steel Technologies' insufficiency-of-the-evidence claims. Essentially, [Congleton's] allegation that some of Steel Technologies' claims of error were not properly preserved is simply an alternate ground for affirming the Court of Appeals. Such an allegation is not required to be cross-appealed. *See Hale v. Combs*, 30 S.W.3d 146, 150 (Ky.2000) ("[T]he prevailing party need not file a cross-appeal in order to assert that the lower court (or administrative agency) reached the right result for the wrong reason."); *Commonwealth, Corr. Cabinet v. Vester*, 956 S.W.2d 204, 205–06 (Ky.1997) ("Where the prevailing party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention."). The Appellees are not now barred from asserting that Steel Technologies' claims were not preserved.

*Steel Technologies*, 234 S.W.3d at 927. Thus, *Steel Technologies*, by way of *Vester*, established the limited exception to Taub that a cross-petition need not be filed when the issues raised by the appellee in this Court may properly be characterized as "simply an alternate ground for affirming the Court of Appeals." Kessler argues that this exception applies here, and allows us to rule on the various issues which were presented to the Court of Appeals, but were not cross-appealed.

Undoubtedly, there will be occasions when it may be difficult to determine whether an issue squarely presented to, but not addressed by, the Court of Appeals (and thus deemed decided against the prevailing party) may be "simply an alternate ground for affirming the Court of Appeals." However, this case presents no such difficulty. The issues which Kessler now wishes to argue (e.g., the award of attorney's fees, the admissibility of expert testimony) cannot be reasonably regarded as merely alternative grounds for upholding the Court of Appeals' decision to vacate the trial judgment on account of Judge Goodwine's perceived disqualification. To give *Vester* the expansive reading urged by Kessler would eviscerate CR 76.21. We accordingly reject its application in this case.

Thus, under the *Taub* interpretation of CR 76.21, Kessler's failure to cross-petition for discretionary review on those issues raised before the Court of Appeals, but not addressed, would seemingly result in those being treated as decided against Kessler. In effect, *Taub*'s interpretation of CR 76.21 employs the fiction that issues which the Court of Appeals did not address were decided against the party prevailing in that court. It is, however, difficult to conceive how that fiction can be employed when the rationale upon which the Court of Appeals vacated the whole judgment would apply with equal force to the lesser issues which it declined to ad-

dress. For example, if Judge Goodwine's disqualification invalidated the entire judgment, it would have also invalidated each of the lesser rulings she made as she presided over the case. It is inconceivable that a court which set aside the judgment because of the judge's perceived disqualification can be deemed to have upheld the judge's separate trial rulings, as those rulings would likewise be subject to the disqualification. It is, we conclude, simply unreasonable to apply *Taub* here, and we find support for that conclusion in *Cowan v. Telcom Directories*, 806 S.W.2d 638 (Ky. 1991).

In *Cowan*, the Attorney General (AG) brought suit against Telcom for a violation of the Consumer Protection Act. The Franklin Circuit Court entered summary judgment in favor of the AG. The Court of Appeals reversed, holding that the Franklin Circuit Court lacked subject matter jurisdiction over Telcom's activity because the area had been preempted by federal law. Given its perceived lack of jurisdiction, the Court of Appeals had no reason to rule on the other issues presented. We granted discretionary review. Telcom did not cross-petition on the other issues. We reversed, holding there was no federal preemption. Telcom then argued that the matter should be remanded to the Court of Appeals to rule on the issues which it failed to decide due to its erroneous disposition of the case. The AG conversely argued that since Telcom had not cross-petitioned, remand to the Court of Appeals to decide the other issues was inappropriate and that summary judgment should be reinstated.

In determining that remand was proper despite CR 76.21(1), we stated as follows:

It is the position of the Attorney General that by reason of the failure of Telcom to file a cross-motion for discretionary review, as required by CR 76.21(1), the merits of the summary judgment in favor of the Attorney General have been affirmed. Specifically, that based upon this Court's conclusion that state court jurisdiction has not been federally preempted by implication, and absent Telcom raising the merits of the summary judgment for review by this Court, it is affirmed. The requirement of CR 76.21(1) is clear, and it has been properly interpreted and applied in *Comm. of Ky., Transportation Cabinet, Dept. of Highways v. Taub*, Ky., 766 S.W.2d 49 (1988) and *Green River District Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989).

In this instance, the only issue considered by the Court of Appeals was whether state court jurisdiction had been federally preempted. Upon its determination that such was the case, it was without power to decide any other issue raised including the propriety of the summary judgment. *The determination by any court that it lacks authority to decide the controversy constitutes an express declaration that it is without power to decide any other issue.* Accordingly, we conclude that a cross-motion for discretionary review was not required and that the Court of Appeals is not precluded from consideration of this matter on the merits.

*Id.* at 642. (Emphasis added.)

The facts of *Cowan* are sufficiently analogous to the present case that the exception to *Taub* and CR 76.21 therein created should be applied. It follows implicitly from the Court of Appeals' retroactive disqualification of Judge Goodwine that it deemed the rulings she entered (from which Kessler now seeks relief) void ab initio. This is conceptually similar to the Court's determination in *Cowan* that the circuit court lacked jurisdiction to hear the case and, therefore, its summary judgment order was void. Further, because the

Court of Appeals determined that Judge Goodwine was disqualified from entering any orders in the case, it would have made no sense for it to address any other issues raised on the merits, the same as in *Cowan*.

 Thus, based upon *Cowan* and the unusual facts of this case, we decide that when the Court of Appeals has disposed of a case upon grounds, such as lack of subject matter jurisdiction or disqualification of a trial judge, that eliminated the need for it to decide the other issues, *and* that basis for the disposition would apply with equal effect to the undecided issues, the lack of a protective cross-petition for discretionary review of the undecided issues will not compel us to treat such issues as having been decided against the appellee. In such circumstances, the proper disposition of the case referenced in CR 76.21 may include, as we believe it does here, remanding the case to the Court of Appeals for consideration of the undecided issues.

### CONCLUSION

For the reasons stated herein, the opinion of the Court of Appeals is reversed, and this matter is remanded to the Court of Appeals for further consideration of the other issues presented in the original appeal.

All sitting. All concur.