## Faulkner v. Denniston et al.

(Decided June 23, 1933.)

374

FOWLER, WALLACE & FOWLER and LESLIE W. MORRIS, for appellant.

W. C. HAMILTON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming on original appeal, and reversing on cross appeal.

This is a suit for specific performance. In May, 1931, the appellant, who was then the owner of a pool room and restaurant business in Winchester, Ky., which he conducted in a building rented from Mr. F. H. Haggard, decided to sell his pool room and restaurant fixtures and the good will of his business. He listed this property for sale with the Maxwell Realty Company of Lexington. Mr. J. S. Maxwell, who conducted this realty company, knew that the appellee C. A. Denniston, who then owned a farm of some 153½ acres in Clark county, much incumbered with mortgages, was endeavoring to dispose of it by a trade or otherwise. Indeed, at this time Denniston was on a trade with a man by the name of Brown, but they were at odds over a matter of $500 cash payment to be made by Brown. Maxwell bethought himself of interesting Denniston in a trade of his equity in this farm for the pool room and restaurant business of Faulkner. It is agreed that on Saturday May 16, 1931, Maxwell, who lived in Lexington, as did also Denniston and Faulkner, took Denniston over to Winchester and there met Faulkner at his place of business. After Denniston went through the building in which the restaurant and pool room were conducted, not only downstairs but also the upstairs rooms, which Faulkner seems to have sublet, and had inspected the fixtures and equipment, the three then went out to the farm to look it over. After viewing the farm and agreeing that a small quantity of land containing about 6 acres should be cut off from the farm and retained by Denniston, the trio returned to town. It was Saturday afternoon, and some difficulty was incurred in securing a stenographer to write out a contract between the parties. Finally one was found at the courthouse, and thereupon a contract was drawn up by Maxwell which Faulkner and Denniston signed. The material part of it reads:

"I do hereby offer and agree to purchase your

farm of approximately 153½ acres less one certain tract which has been agreed upon by all parties hereto, and also J. S. Maxwell as witness to the contract, and I assume your loan of approximately $4,800 now on said farm and I also hereby agree to assume a loan with E. C. Miller for the sum of $1,000 and also another loan with J. S. Maxwell for the sum of $1,000, providing that you will accept my restaurant and pool room and all of my equipment located at 15 S. Main Street, Winchester, Kentucky, and same is to be free from all incumbrances. * * * A deed of general warranty with the usual covenants shall be executed to them not later than 10 days, 19—, conveying to —— title to said property. All rents and interest involved in this sale shall be adjusted and prorated to date of transfer. Taxes on said property shall be adjusted as follows: ———. Possession of said property shall be given not later than 10 days from date.

"William Faulkner.

"The above proposition is hereby accepted this 16th day of May, 1931.

"C. A. Denniston."

It may be said in passing that, after an amended petition seeking a reformation of this contract to make the description of the Denniston farm more definite and certain than it appears in the contract, no contest was made on the right to such reformation nor as to the indefiniteness of the description.

The parties met on Monday following the signing of this contract to carry it into execution, when Denniston on discovering, as he claims, that the building in which Faulkner conducted his business was not included in the trade, declined to go forward, and the trade fell through. Three days later Faulkner brought this suit on the contract for a specific performance and filed a lis pendens notice in the proper clerk's office. On Tuesday following the date of the contract, Denniston resumed his negotiations with Brown, but Brown, hearing of the instant lawsuit and not wishing to get into any litigation, although otherwise willing to accede to Denniston's terms, dropped the trade that was on between them. Thereafter Denniston did trade this

farm to the appellee Staton, and the latter has been made a party to this litigation as one who bought with notice of appellant's claimed right to specific performance. After the trade between appellant and appellee fell through on May 18th, Faulkner lost interest in his restaurant and pool room business. He takes the position that thereafter it was really Denniston's business. But Faulkner's employees continued to run the business until July following; Faulkner collecting the proceeds and paying the bills. In July, the place was closed by a distress warrant for rent which had accrued on and since May 15th previous. In October, other distress warrants having been levied because of accruing rent, the equipment of the pool room, restaurant, and living rooms upstairs after having been appraised at considerably less, was sold under the distress warrants for $650. The property having been sold by the purchaser at the execution sale to another, the latter removed it from the Haggard building and took it to another town.

For the appellant there is proof that, before the contract of May 16th was entered into, Denniston clearly understood that it was only the equipment and fixtures which were being sold by Faulkner and that the latter did not own the building in which the pool room and restaurant were conducted, but only had a lease upon it. On the other hand, there is proof for the appellee that it was represented to him that the building was to go in the trade. Appellee's proof conduces to show that the farm which he proposed to trade was reasonably worth $100 an acre, which, being true, after deducting the mortgage indebtedness against it, his equity was worth approximately $8,000; that appellee's fixtures were at the best not worth over $1,000; that the building in which Faulkner conducted his business was worth about $7,000; from all of which it is argued that it would have been foolish for him to have traded his equity for the fixtures only, and that therefore the circumstances corroborate his testimony and claim that the building in which Faulkner did business was to go with the fixtures. On the other hand, appellant introduced proof conducing to show that a few years ago he had paid $6,500 for his fixtures, and that they were at the time of this trade reasonably worth between $4,000 and $5,000. It may be said in passing that, when Faulk-

ner undertook to fix the amount of his damages in the event he was not entitled to specific performance, he depreciated the value of his fixtures considerably. His proof further conduced to show that the value of appellee's farm was not in excess of $75 an acre, which would make the value of appellant's equity about $4,000 only, and that to trade the fixtures worth $4,000 for this equity worth $4,000 was a fair and reasonable trade, whereas to include the building in which he did business and which was worth from $15,000 to $40,000, would have been an absurd proposition, from which it is argued that the circumstances corroborate his version of the transaction. It is very difficult from the evidence in this case to get at the exact truth of the matters at issue. The chancellor found:

> "It is not shown that the consideration which Denniston was to receive from Faulkner in exchange for his farm was grossly inadequate and it is not satisfactorily established by the proof that it was the intention of the parties that the building in which the restaurant and pool room are located was to be included as part of the consideration of the farm."

Having thus found that the contract of May 16th did not include and was not intended to include the building in which Faulkner did business, the chancellor then addressed himself to the question whether Faulkner was entitled to specific performance or not. As to this, he found that, although Faulkner contracted to deliver to Denniston the restaurant, pool room and all equipment free from all incumbrances whatsoever, he had permitted the same to be sold in part for a debt which it was Faulkner's duty to have paid; that is, the rent which had accrued on May 15th, one day before the date of the contract. The chancellor concluded that, by permitting this sale, Faulkner had put it beyond his power to do that which it was incumbent upon him to do under the contract. Faulkner being thus unable to perform his part of the contract, the chancellor declined to decree specific performance. However, being of the opinion that Faulkner was entitled to damages for Denniston's breach of this contract of May 16th, the chancellor fixed those damages at the value of Denniston's share of the crops produced on his farm during the crop year 1931 and which was $750. The ap-

pellant has appealed, insisting, first, that he was entitled to a specific performance of his contract, but, if in error as to this, that then the chancellor did not in arriving at his damages use the proper measure, which was the difference between the value of his fixtures and the value of the farm. The appellee has also prosecuted a cross-appeal, insisting that appellant was not entitled to any damages; there being no contract between the parties.

On the original appeal, our minds being left in doubt, we adopt the conclusion of the chancellor that the parties did not intend to include the Haggard building in their contract of May 16th. And we also approve his finding that, because Faulkner had put it out of his power to do that which it was incumbent upon him to do under the contract, he was not entitled to specific performance. The rule is well settled that specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case. Glenn v. Lowther, 219 Ky. 383, 293 S. W. 947. So if a decree of specific performance would work a hardship or injustice upon the defendant, or operate oppressively upon him, a court of equity will decline to interfere. Jones v. Prewitt, 128 Ky. 496, 108 S. W. 867, 33 Ky. Law Rep. 358. It is also the general rule that a party seeking specific performance must show that he has performed or offered to perform or is ready, able, and willing to perform all the essential acts required by the contract. While a repudiation of the contract by the purchaser may excuse the necessity of tender of performance by the seller, the necessity on the part of the latter of being in a position at the proper time fully and completely to perform the contract is not dispensed with. 58 C. J. 1065 et seq.; Lowther-Kaufman Oil & Coal Co. v. Gunnell, 184 Ky. 587, 212 S. W. 593; May's Heirs v. Fenton, 7 J. J. Marsh. 306; Turner v. Clay; 3 Bibb, 52. Measured by these rules, the chancellor was fully justified in refusing the specific performance requested by the appellant. Through his own default, he had permitted his pool room and restaurant fixtures to be sold and removed from the premises to another town. He has rendered himself unable to perform his side of the

contract. He is not entitled, under the circumstances, to the specific performance he seeks. However, on the question of the amount of damages to be awarded Faulkner for Denniston's breach of contract, we are unable to follow the chancellor.

After a careful study of the evidence, we have come to the conclusion that the value of the pool room, restaurant, and other fixtures of Faulkner at the time of the trade was no greater or less than the then value of Denniston's equity in his farm, which, being true, Faulkner was entitled to nominal damages only because of Denniston's breach of that contract. 17 C. J. 721 et seq. Cf. Harmon v. Thompson, 119 Ky. 528, 84 S. W. 569, 27 Ky. Law Rep. 181.

The judgment is therefore affirmed on the original appeal in so far as it denied specific performance, and is reversed on the cross-appeal in so far as it awarded appellant damages in the sum of $750, with instructions to enter a judgment for him for nominal damages only.