BYERS v. FULLER.

No. 215.

District Court, E. D. Kentucky.

Feb. 1, 1945.

Duncan & Duncan and J. M. Kennedy, all of Monticello, Ky., for plaintiff.

Stephens & Steely and H. C. Gillis, all of Williamsburg, Ky., for defendant.

FORD, District Judge.

The plaintiff D. C. Byers seeks to recover from the defendant George C. Fuller possession of certain lands located in Wayne and McCreary counties, Kentucky, to which he claims to be entitled as the owner of certain oil and gas leases which he asserts are wrongfully possessed and withheld from him by the defendant.

The defendant asserts his right to the possession of the leasehold estates, claimed by the plaintiff, under the terms and provisions of a written contract with plaintiff of October 25, 1939, as supplemented and modified by a subsequent writing of August 19, 1940. He further claims that he is the equitable owner of the leasehold estates in the property by virtue of his exercise of an option to purchase granted him by the contract and, tendering payment of the balance of the purchase price and alleging that he has performed all the terms and conditions of the contract, by counterclaim he seeks specific performance of the contract by the execution and delivery of such instruments of writing as

may be necessary to vest in him legal title to the property and to quiet his title thereto subject only to the plaintiff's right to a royalty of ⅓₂ of the oil produced, as stipulated in the agreement.

It is admitted by the plaintiff that the contract relied upon by the defendant was made and that, under the terms and conditions thereof, on or about September 1, 1940, he turned over and delivered to the defendant full possession and control of the claimed property for operation and development of the oil wells located thereon, but he asserts that soon after the defendant sought to exercise the purchase option, he called to defendant's attention his failure to comply with the contract in respect to cleaning out the oil wells, and thereupon he and the defendant had an oral agreement by which the then subsisting written contract was abrogated and it was agreed that the defendant should continue in possession of the property only so long thereafter as might be reasonable to enable him to complete the cleaning out of the wells, and thereby entitle him to the return of the cash payment of $1,000 which he had made upon taking over the property.

The claim as to a subsequent oral agreement between the parties which supplanted the writings referred to is not supported by a fair preponderance of the evidence and must be rejected.

The written contract, as supplemented, granted to defendant an option to purchase the property and equipment at any time on or before September 1, 1941, for the sum of $8,500 payable "at the rate of 25% of the oil produced, not to exceed $1,000 per year", reserving to plaintiff a royalty of ⅓₂ of all oil produced therefrom.

By another provision of the contract the defendant obligated himself to clean out and test all wells which were then equipped for pumping.

At the time defendant took over possession and management of the property, there were about 35 old oil wells on it. The pumping equipment attached to them was old and considerably dilapidated. By repairing and replacing much of the equipment, the defendant succeeded in substantially increasing the production from some of the wells. Being satisfied with the prospects, he decided to exercise his option to purchase, and on July 17, 1941, he wrote a letter to the plaintiff in these words: "As the owner of these properties, it is my

intention to proceed with the agreement with you having to do with the purchase of these properties, which was dated October 25, 1939, and to carry out all the terms of this agreement."

At the time of thus giving notice of his election to purchase, the defendant had taken no steps to clean out the wells. In fact, no attempt was made to clean out any of them until 1942 and no increase in production appears to have been realized from such efforts.

Having found that defendant had failed to clean out the wells as he agreed, and that other persons might be interested in purchasing the property, on January 31, 1944, plaintiff wrote the defendant the following letter: "This is to notify you that your contract with me, of date October 25, 1939, is terminated. You have failed to carry out your contract. You have failed to elect to do certain things as your contract calls for. I am this day taking possession, actual charge of this property and you are notified to keep off this property and have nothing more at all to do with it." The defendant refused to surrender possession and this litigation ensued.

In the brief of his counsel, plaintiff's main contention in justification of his action in disregarding defendant's election to purchase is stated thus: "The cleaning out of the wells is a dependent condition or promise, the performance of which is required before the option may be exercised."

In support of this contention, plaintiff quotes and relies upon rules prevailing in many jurisdictions to . the effect that "Courts will not and ought not to construe promises as independent unless no other interpretation is possible" and "the presumption is that all stipulations in a contract are dependent." Although Kentucky law is controlling upon the point (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), no Kentucky cases approving or applying these rules are cited.

■ The rule uniformly applied by the courts of Kentucky is that in construing contracts embracing several obligations, the determination of whether they are dependent or independent, entire or severable, depends upon the intention of the parties as disclosed by the terms of the contract itself considered in the light of the subject matter involved and the object to be attained. Gilmore v. W. B. Samuels & Co., 135 Ky. 706, 123 S.W. 271, 21 Ann.Cas. 611; Dorsey v. Clark, 223 Ky. 619, 4 S.W.2d 748; O'Bryan v. Mengel Company, 224 Ky. 284, 6 S.W.2d 249; Hospelhom v. Circle City Coal Company, 6 Cir., 117 F.2d 166.·

Nothing is found in the law of Kentucky to indicate that such determination is to be influenced by any legal presumption or rule of construction favoring one interpretation rather than the other. On the other hand, in Gilmore v. Samuels, 135 Ky. 706, 719, 720, 123 S.W. 271, 275, 21 Ann.Cas. 611, supra, it is said: "Our court has in many instances * * * been called upon to construe contracts where the issue was made to turn on the question as to whether they were severable or not, and it has uniformly been held that, where the plain language of the contract did not force a contrary construction, the contract has been held severable in order that the intention of the parties might be carried out as far as possible."

In Koppers Company v. Asher Coal Mining Company, 226 Ky. 492, 497, 11 S.W.2d 114, 116, it is said: "If the agreement embraces a number of distinct subjects which admit of being separately executed or enforced, the general rule is that it shall be taken distributively, and each subject considered as forming a separate agreement."

■ By the terms of the contract here under consideration, the exercise of the option to purchase was in no respect conditioned or made to depend upon the cleaning out of the wells. That the parties did not so intend is evidenced by the express provision permitting the exercise of the option at any time on or before September 1, 1941, and by the further fact that the contract obligated the defendant to clean out all wells then equipped for pumping without regard to whether or not he might exercise the option to purchase.

■ The plaintiff further contends that neither of the letters of July 17th or 25th, 1941, are sufficiently unqualified, unconditional and unequivocal in their terms to constitute an effectual exercise of the option. Although this issue is not raised by the pleadings, the question was presented and considered at the trial without objection and treated in all respects as if it had been raised in the pleadings. Rule 15(b) of the Federal Rules of Civil Procedure,

28 U.S.C.A. following section 723c, provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

The letters referred to were admittedly received by the plaintiff long before the expiration of the stipulated time limit of the option. The intention of the defendant to purchase the property in accordance with the terms and conditions of the contract could hardly be more clearly expressed and the plaintiff admits he so understood the letters. This notice to plaintiff of defendant's election to purchase had the effect of converting the option into a contract of bargain and sale, by which the defendant acquired a vested equitable title to the property, subject only to his liability to comply with the terms of the agreement, the legal title remaining in the plaintiff in trust for the defendant and as plaintiff's security for fulfillment of the provisions of the agreement constituting the consideration for the transaction.

Since the contract contains no forfeiture provision and plaintiff disclaims reliance upon that ground, no ground is shown upon which this action for ejectment is maintainable. Benjamin v. Dinwiddie, 226 Ky. 106, 10 S.W.2d 620; Wheeler v. Gahan, 206 Ky. 366, 267 S.W. 227; Walton's Ex'r v. Franks, 191 Ky. 32, 35, 228 S.W. 1025. Whether plaintiff is entitled to maintain an action for damages for breach of contract or to enforce a lien on the property on account thereof are questions not presented in this case. That the law provides an adequate measure for such damages, however, does not seem doubtful. Corbin Oil & Gas Co. v. Mull, 123 Ky. 763, 97 S.W. 385; Henderson v. Foster, 232 Ky. 519, 23 S.W.2d 917.

This brings us to the consideration of defendant's counterclaim for specific performance.

The equitable remedy of specific performance is not available to litigants as an absolute right. The granting of it is a matter of discretion, not of an arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. A decree for specific performance will not ordinarily be made in favor of a party who has himself violated his part of the contract which he seeks to enforce. Before one may obtain the benefits conferred by this equitable remedy, he has the burden of proving that he has performed the obligations which the contract imposes upon him. This is merely an expression and application of familiar principles of equity that he who seeks equity must do equity and he who comes into equity must come with clean hands. Kuntz v. Peters, 286 Ky. 227, 150 S.W.2d 665; Faulkner v. Denniston, 250 Ky. 373, 63 S.W.2d 286; Williamson v. Ingram, 243 Ky. 749, 750, 49 S.W.2d 1005.

It appears from the evidence that the oil wells located upon the property in question were drilled thirty or forty years before this litigation. The plaintiff purchased the leases in 1931, when it appeared that the wells had been practically exhausted by many years of intensive operation. The contract here involved indicates, however, that both parties entertained the hope that substantial increase in their production might be accomplished by removal of accumulated sediment by adequate cleaning and improved operating methods. The fact that the undertaking involved a large element of uncertainty and might prove fruitless is no defense to the failure of the defendant to fulfill his agreement. The covenant was a lawful one and the plaintiff, whose royalty interest was at stake, had the right to have the property thus exploited. The cleaning of the wells and the prospect of thereby enhancing his royalty was clearly an important part of the consideration and perhaps the principal inducement to the plaintiff to enter into this unique contract. Defendant's belated efforts to clean some of the wells with makeshift equipment falls far short of fulfillment of his contractual obligation. Although it is clear, as pointed out, that defendant's right to exercise the option to purchase was not dependent upon his fulfillment of that provision of the contract, nevertheless, such default on the part of one applying for equitable relief is a matter properly to be considered in determining whether judicial discretion should be exercised in his favor.

I am of the opinion that, under settled rules of equity, the defendant has failed to demonstrate his right to the extraordinary equitable relief sought by his counterclaim.

For the reasons indicated, both the petition and the counterclaim should be dismissed.