RENDERED:  MAY 19, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0549-MR

CHRISTOPHER LEE MAYS                                              APPELLANT

v.
APPEAL FROM MENIFEE CIRCUIT COURT
HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 20-CI-90059

BENNY PATRICK;
JESSICA PATRICK; AND
ELIZABETH GRACE MAYS                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE,
JUDGES.

ECKERLE, JUDGE:  This case presents an underlying issue with well-settled law:

whether a Trial Court properly granted summary judgment and ordered specific

performance of a purchase agreement for residential real property.  The underlying

issues are intermixed with allegations that the Trial Court was languishing under

an appearance of partiality. We affirm the order granting summary judgment because the Trial Court has since recused from the case, the parties did not request that the Trial Court retroactively vacate the summary judgment order, and we have thoroughly examined the record and conducted a *de novo* review of the summary judgment issues and find no error. We begin with a detailed history of the underlying facts and proceedings, as there was significant confusion leading up to the order being entered and appealed.

## BACKGROUND

In March 2020 Christopher Lee Mays (Christopher) and Elizabeth Grace Mays (Elizabeth) entered into a Divorce Contract while their marital dissolution action was pending in Menifee Circuit Court. Pursuant to the terms of the Divorce Contract, it was agreed that Christopher would receive all right, title, and interest in the marital residence located in Frenchburg, Kentucky.[1] On June 22, 2020, the Trial Court ordered the Decree for Dissolution of Marriage, which adopted the terms of the Divorce Contract.

Between the Divorce Contract's execution and the Decree for Dissolution of Marriage's entry, Christopher executed a purchase contract agreeing

---

[1] Though Christopher and Elizabeth disagree about the legal effect of this Divorce Contract, Christopher admitted this term of the Divorce Contract in his answer to the underlying Complaint (as did Elizabeth in her answer as well, although it was ultimately stricken as untimely).

to sell the aforementioned marital residence to Benny and Jessica Patrick (the Patricks), with the Patricks also agreeing to purchase the same from Christopher. The purchase contract used was a form prepared by the Lexington-Bluegrass Association of REALTORS®, containing certain boilerplate terms with blanks for conditions such as earnest money, financing, a closing date, and the like. The majority of the blanks were filled in, and several boxes had been checked on the form. It appears that Christopher and the Patricks executed the purchase agreement with digital signatures. The purchase agreement stated that closing "shall occur on or before 07/03/2020"; it did not include language indicating that time was of the essence.

The closing, however, did not occur. The Patricks allege that this was caused by a protest made by Elizabeth. According to the Patricks, on July 3, 2020, they mailed to the Mays a demand letter seeking performance pursuant to the terms of the purchase agreement. Neither Christopher nor Elizabeth honored the requests of the demand letter.[2]

The Patricks filed a Complaint in Menifee Circuit Court on August 28, 2020. In their Complaint, the Patricks alleged the foregoing and prayed that

---

[2] As shown below, Christopher later claimed that the Patricks had not yet secured financing and were not prepared to close; the Patricks claimed their appraiser was not permitted access to the residence's interior for an appraisal, thus prohibiting the Patricks from securing financing.

the Trial Court would grant: (1) specific performance pursuant to the terms of the purchase agreement; (2) attorney's fees and costs related to the case; (3) damages incurred in good faith reliance on the contract; and (4) any and all other relief to which they may appear entitled.

The record from this point forward is replete with procedural anomalies leading to much confusion. There appears to have been some issue with service as both summonses are in the record and marked "unclaimed." In spite of the problems with service, the Patricks nonetheless moved for a final hearing in November of 2020, serving the motion on whom they believed to be the attorneys representing Christopher and Elizabeth. Christopher's purported attorney then filed a notice of nonrepresentation. In January of 2021, the Patricks then moved for summary judgment against Christopher and Elizabeth. Almost a month later, service of process was finally effected on Christopher.

On February 1, 2021, a few days after Christopher was served, the Trial Court then *sua sponte* entered an order giving Christopher and Elizabeth ten days to file motions for summary judgment and all parties five days to reply, as the Trial Court recognized that the Patricks' motion for summary judgment had been sent to an unused e-mail address.

Christopher then filed his Answer on February 24, 2021. Elizabeth filed her Answer and Cross-Claim against Christopher on March 23, 2021. Three days later, the Trial Court entered summary judgment in favor of the Patricks.

On April 1, 2021, Christopher moved to vacate the order granting summary judgment. Christopher noted that the Patricks had filed for summary judgment before Christopher had been served with process. An affidavit signed by Christopher was attached to the motion. Additionally, Christopher noted that "[a]t no point has Christopher Mays received a physical copy of the Motion for Summary Judgment by any means whatsoever." Christopher argued in his motion to vacate that he had not been given proper notice of the motion, that there had never been a hearing on the motion, and that there were genuine issues of material fact that precluded granting summary judgment. Elizabeth likewise filed a motion to vacate, incorporating Christopher's reasons and also arguing that specific performance should not be granted because the Patricks had not secured financing by the closing date. Elizabeth further moved the Trial Court to recuse because the Trial Court's son-in-law was a first cousin to Jessica Patrick.

On April 13, 2021, the Trial Court vacated the summary judgment against Christopher because he had not properly received service of process. The Trial Court noted:

> It is understandable that new counsel for Christopher
> would be confused in simply looking at the record, with

little to nothing having been filed, and much of the confusion stemming from the representations made at hearings and conference calls, one of which is not part of the record, and the other requires digging deeper and reviewing the recording of the hearing. Having said that, Christopher is correct that Summary Judgment, as to him, is inappropriate and, therefore, is VACATED.

The Trial Court denied Elizabeth's motion to vacate, noting that her Answer was almost 90 days late with no request for leave to file a late Answer, and that her motion to vacate largely parrots Christopher's. The Trial Court converted the summary judgment order into a default judgment against Elizabeth and struck Elizabeth's late-filed Answer. The Trial Court appears to have denied the motion to recuse, but, curiously, indicated that the Trial Court "will endeavor to obtain a substitute Judge for the jury trial to be held in this matter . . . ."

Next, Christopher filed a response to the Patricks' motion for summary judgment, claiming a material issue of fact existed because the Patricks allegedly had not secured the financing or appraisals necessary to close on July 3, 2020. Christopher's newly-retained counsel also noted that he intended to conduct discovery, and thus granting summary judgment was premature. Christopher subsequently filed of record discovery requests he propounded on the Patricks; he also conducted depositions of the Patricks' real estate agents and appraiser and filed those of record. Christopher purportedly deposed the Patricks' loan agent, but that deposition is not filed of record.

In November of 2021, the Patricks filed an Amended Motion for Summary Judgment against Christopher, requesting specific performance pursuant to the terms of the purchase agreement, with a reservation of rights to seek attorneys' fees and damages.[3]  At a hearing on December 9, 2021, the Trial Court granted counsel for Christopher the full 30 days he requested to file a response. No response was filed because counsel for Christopher forgot to file a response.

On February 16, 2022, the Trial Court entered an Order granting partial summary judgment in favor of the Patricks.  The Trial Court held that the Divorce Contract was a valid and enforceable contract, with no evidence that it should be modified pursuant to CR[4] 60.02.  Furthermore, as the Divorce Contract had no legal restrictions against sale or alienation, it transferred full equitable title to Christopher and left Elizabeth with only bare legal title pursuant to *Nelson v. Mahurin*, 994 S.W.2d 10 (Ky. App. 1998) and *Sebastian v. Floyd*, 585 S.W.2d 381 (Ky. 1979).  The Trial Court further held that the purchase agreement did not state time was of the essence as to the closing date, and no evidence had been presented that the closing date was vital to the terms of the purchase agreement. Thus, pursuant to *Bennett v. Stephens*, 293 S.W.2d 879 (Ky. 1956), the Trial Court held that the failure to close on or before the date did not vitiate the contract.  Pursuant

---

[3] Elizabeth never contested the default judgment.

[4] Kentucky Rules of Civil Procedure.

to *Billy Williams Builders and Developers Inc. v. Hillerich*, 446 S.W.2d 280 (Ky.

1969), the Trial Court ordered specific performance and ordered that all proceeds

from the sale be held in escrow pending a determination of any damages to which

the Patricks may be entitled. The order was designated final and appealable.

On February 22, 2022, Christopher filed a motion pursuant to CR

59.05 and 60.02 to vacate the February 16, 2022, order granting partial summary

judgment. The only ground raised to vacate the order was that counsel for

Christopher forgot to file a timely response. On March 10, 2022, the Trial Court

held a hearing on the motion, wherein the Trial Court judge made the following

statement to counsel for Christopher:

> Oddly enough, when this case first started one of the
> bailiffs told me that your clients [*sic*] felt like they could
> wear the Patricks out by delay, delay, delay, because the
> Patricks had sold their house, as you know, in
> anticipation of completing the transaction, and then the
> wheels fell off the cart.
>
> . . .
>
> And after all this, all the digging in the weeds, you know
> some representations were made, and I even went up and
> looked at the divorce case, the file on the divorce case,
> 'cause it was represented to me that [Christopher] had
> conveyed an interest to [Elizabeth] before the signing of
> the purchase agreement. Well, that wasn't borne out by
> the actual file itself, it to me was signed after
> [Christopher] had equitable title to the property by virtue
> of the property settlement agreement and signed the
> purchase agreement. I would be glad to help you out, but
> this case has gone on too long.

In response, counsel for Christopher averred: (1) that the Patricks had a contract to sell their house before entering the purchase agreement with Christopher; and (2) whether the Patricks would be ready to close in a reasonable amount of time was an outstanding question, as an appraisal was still needed, after which the bank would need a few weeks to approve financing. The Trial Court responded that it had already ruled on those issues.

Christopher filed a notice of appeal, and though "[a] notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court[,]" *City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky. 1990), Christopher nonetheless filed a motion[5] pursuant to KRS[6] 26A.015 requesting the Trial Court judge recuse himself. Christopher argued that recusal was mandated due to statements the judge made at the March 10, 2022, hearing indicating he had engaged in or overheard conversations with the bailiff about this case and further indicating that the judge had conducted an independent investigation into the facts by reviewing the file in the marital dissolution action between Christopher and Elizabeth. Christopher did not request the Trial Court to vacate its previous order.

---

[5] At the hearing on this motion, the Trial Court noted it had lost jurisdiction, but counsel for Christopher argued that because the issue of damages remained, the case was still properly before the Trial Court even though the summary judgment issue of specific performance was on appeal.

[6] Kentucky Revised Statutes.

The Trial Court clarified his previous statement regarding the communications with the bailiff. The Trial Court indicated he made a "misstatement" regarding having a conversation with the bailiff, but instead had overheard bailiffs talking:

> I overheard a conversation leaving the courtroom that the bailiffs were having. That conversation was reflected in my comments that apparently they were right, because two un-responded motions for summary judgment is unusual and appeared to be a delaying tactic, but that's part of the case that's on appeal.

Counsel for Christopher further argued that the Trial Court made a factual misstatement at the previous hearing regarding the Patricks having already sold their house anticipating a closing with Christopher. Counsel noted that the requests for admissions, which had not been filed in the record, showed only that the Patricks entered into a purchase agreement with another party to sell the Patricks' house prior to entering into a purchase agreement with Christopher. Counsel for Christopher argued that the statements *in toto* showed at least an appearance of partiality. The Trial Court then recused, not announcing any reasoning from the bench. A subsequently entered order recusing was likewise summary in nature. Christopher timely filed a second notice of appeal.[7] Christopher also filed a supersedeas bond.

---

[7] Christopher filed two notices of appeal, both timely, the first not naming all the parties and only appealing from the March 18, 2022, order, and the second naming all the parties and additionally appealing the order granting summary judgment. Between the two notices of appeal, Christopher changed counsel, and thus each notice was filed by separate counsel. As the instant

## ANALYSIS

Christopher raises seven allegations of error regarding the proceedings below. They can be grouped into two main issues: (1) substantive issues relating to the grant of summary judgment; and (2) procedural ramifications of the Trial Court's recusal. We will address the recusal issues first after addressing the briefing errors we encountered.

### I. Briefing Errors.

Considering the confusion in the record below that was created by actions undertaken by all parties involved in this case, it seems we could expect Christopher's brief in this Court to comply fully with our procedural rules and bring about some measure of clarity. Unfortunately, his brief does not, and we pause here briefly to discuss those errors. Principally, Christopher does not include at the beginning of his Argument section and subsections any preservation statements as were required by the former CR 76.12(4)(c)(v).[8] For this violation

---

case involves only one case and one judgment, only one notice of appeal was necessary. *Cf. W.L.C. v. Commonwealth Cabinet for Health and Family Services*, 484 S.W.3d 737, 745 (Ky. App. 2016) ("Because there were two separate cases and two separate judgments, two separate notices of appeal should have been filed."). Regardless, both notices were timely filed, and thus this procedural anomaly does not require us to create jurisdiction retroactively, *see, e.g.*, *City of Devondale*, 795 S.W.2d at 957. We nonetheless caution litigants in the future to be careful to appeal from the judgment, and not the order denying the CR 59.05 relief, which is interlocutory, and also to name all the requisite parties in the notice of appeal. *See Ford v. Ford*, 578 S.W.3d 356 (Ky. App. 2019).

[8] As of January 1, 2023, this Rule and many others have been replaced by the Kentucky Rules of Appellate Procedure (RAP). As the briefs in the instant case were filed prior to the effective date of RAP, we utilize the prior rule.

-11-

alone we could dismiss the appeal, *see, e.g.*, *Krugman v. CMI, Inc.*, 437 S.W.3d 167 (Ky. App. 2014) (dismissing appeal when brief failed to include preservation statements at the onset of each of nine argument sub-sections), or review only for manifest injustice, *see, e.g.*, *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("the manifest injustice standard of review is reserved only for errors in appellate briefing related to the statement of preservation").

Additionally, Christopher claims in one of his argument sub-headings that "palpable error" occurred below, and yet his brief neither cites to CR 61.02,[9] the substantial error rule in civil cases, nor to RCr[10] 10.26, the criminal rule counterpart, both of which have been interpreted "identically." *Nami Resources Company, L.L.C. v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 338 (Ky. 2018). Furthermore, other than in the heading to this argument, Christopher neither utilizes the word "palpable" nor makes any argument regarding how this alleged error amounts to palpable error or how said palpable error resulted in manifest injustice. Christopher's briefing error runs in the face of longstanding jurisprudence that "[a]bsent extreme circumstances amounting to a substantial

---

[9] CR 61.02 reads:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

[10] Kentucky Rules of Criminal Procedure.

miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made *and briefed* by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008) (emphasis added).

Though Christopher's appellate briefing errors constitute substantial deviations from our Rules, we nonetheless have conducted a *de novo* review of the summary judgment issues and further "plumb[ed] the depths of the proceeding" to determine whether there were any "defect[s] in the proceeding [that were] shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). In so doing, we have found no error warranting reversal. Counsel is cautioned in future filings to comply fully with the RAP briefing requirements.

## II. Issues relating to the Trial Court's recusal.

Christopher presents multiple issues with the Trial Court's recusal that we address together. Christopher complains that the Trial Court considered *ex parte* communications, conducted an independent investigation into the facts, made unsupported statements of material fact pertaining to the case, and formulated an opinion about the merits of the case before discovery was taken. When presented with a motion to recuse on these bases, the Trial Court granted said motion and recused from the case. Because Christopher has received the relief requested below – namely the Trial Court's recusal – and because Christopher did not file a

motion pursuant to CR 60.02 requesting that the Trial Court's order be vacated due to an appearance of impropriety, we decline to vacate the Trial Court's order.

Both KRS 26A.015 and SCR[11] 4.300, Canon 2, Rule 2.11 require judges to disqualify themselves in circumstances in which their impartiality might reasonably be questioned. Pursuant to the statute, a judge shall disqualify himself or herself in a proceeding for five enumerated reasons:

> (a) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding;
>
> (b) Where in private practice or government service he served as a lawyer or rendered a legal opinion in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter in controversy, or the judge, master commissioner or such lawyer has been a material witness concerning the matter in controversy;
>
> (c) Where he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a pecuniary or proprietary interest in the subject matter in controversy or in a party to the proceeding;
>
> (d) Where he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>> 1. Is a party to the proceeding, or an officer, director, or trustee of a party;

---

[11] Kentucky Supreme Court Rules.

-14-

2. Is acting as a lawyer in the proceeding and the
disqualification is not waived by stipulation of
counsel in the proceeding filed therein;

3. Is known by the judge or master commissioner
to have an interest that could be substantially
affected by the outcome of the proceeding;

4. Is to the knowledge of the judge or master
commissioner likely to be a material witness in the
proceeding.

(e) Where he has knowledge of any other circumstances in
which his impartiality might reasonably be questioned.

KRS 26A.015(2)(a)-(e).  The Rule is similar to the statute.  As the Rule is broad

and requires disqualification when a judge's impartiality might reasonably be

questioned, our Supreme Court notes "that the obligation to recuse may exist

whether any of the specific circumstances delineated [in the Rules] are met."

*Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 484-85 (Ky. 2021).

These dual provisions echo "the higher consideration that every

litigant is entitled to 'nothing less than the cold neutrality of an impartial judge'

and should be able to feel that his cause has been tried by a judge who is 'wholly

free, disinterested, impartial and independent.'"  *Dotson v. Burchett*, 301 Ky. 28,

34, 190 S.W.2d 697, 700 (1945) (quoting *Commonwealth v. Murphy*, 295 Ky. 466,

174 S.W.2d 685 (1943), and 30 Am. Jur. *Judges* § 53).  Analysis under the statute

and Rule seeks not to "impugn" a judge's integrity or even to determine whether a

judge is truly impartial, but rather to determine whether the "impartiality might reasonably be questioned." *Abbott, Inc.*, 626 S.W.3d at 485 (quoting and abrogating on other grounds *Sommers v. Commonwealth*, 843 S.W.2d 879, 882 (Ky. 1992)).

In the instant case, we are not called upon to do either, as the Trial Judge recused himself after the filing of a proper motion and consideration of the appearance of impartiality. In fact, the Trial Court is in the "best position to determine whether questions raised regarding his impartiality were reasonable." *Jacobs v. Commonwealth*, 947 S.W.2d 416, 417 (Ky. App. 1997). We need not "second-guess his decision." *Id.*

Moreover, "where an actual disqualifying condition is discovered after entry of judgment, it does not follow automatically that the judgment must be vacated." *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467, 473 (Ky. 2010). To make that determination, our Supreme Court requires the analysis of three risks: (1) the risk of injustice to the parties in the particular case; (2) the risk that denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. *Id.* (adopting the test from *Liljeberg v. Health Services Acquisition Corporation*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)).

The analysis of those three risks is not before us, however, because Christopher neither filed a motion to vacate the order nor requested such relief. *See Alred v. Commonwealth, Judicial Conduct Comm'n*, 395 S.W.3d 417, 444 (Ky. 2012) ("Whether a defendant has properly preserved a disqualification issue for review is a separate issue from whether a judge violated the mandatory requirements of [the Rules] and KRS 26A.015."). *Petzold* is illustrative. There, the parties discovered after entry of a judgment and while that judgment was on appeal that there existed a potentially disqualifying association between the trial judge and one of the parties. 303 S.W.3d at 469. A motion pursuant to CR 60.02 was filed by one of the parties requesting that the previously-entered orders be vacated. *Id*. The trial judge held a hearing and declined to vacate the orders. *Id*. That order denying the CR 60.02 motion was appealed and consolidated with the underlying orders already on appeal. *Id*. at 470. Accordingly, the issue of whether to vacate the previously-entered judgment due to violations of the Rules or KRS 26A.015 was properly before the *Petzold* Court.

In the instant case, we have no such means to address this issue. Because the motion to recuse was filed after the notice of appeal, Christopher had to file a separate appeal and move to consolidate with the instant appeal to get the issue before us. Christopher could not separately appeal, though, because his motion was made pursuant to KRS 26A.015, and a ruling on a motion pursuant to

-17-

KRS 26A.015 is interlocutory and not appealable. *Cassetty v. Commonwealth*, 495 S.W.3d 129, 135 (Ky. 2016) ("Simply put, a notice of appeal naming only an order denying a motion to recuse, and not a final judgment, is fatally defective."). To effectuate his appeal, Christopher should have filed his motion pursuant to CR 60.02 and requested the extraordinary relief that the summary judgment order be vacated. *Petzold*, *supra*. Having failed to do so, we lack jurisdiction to entertain such claims from an interlocutory order with no notice of appeal. *Tax Ease Lien Investments 1, L.L.C. v. Brown*, 340 S.W.3d 99, 101 (Ky. App. 2011) ("First, we note that this court is required to raise a jurisdictional issue on its own motion if the underlying order lacks finality.").

Second, Christopher prevailed on his own motion and received exactly the relief requested. Christopher only asked the Trial Judge to recuse, which he did. Christopher did not request the Trial Court to vacate its previous order. "This Court has stated on numerous occasions that 'appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court.'" *Sneed v. University of Louisville Hospital*, 600 S.W.3d 221, 228 (Ky. 2020) (quoting *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010)). Likewise, "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999).

Christopher received the relief he requested, and we will not review Christopher's new arguments and request for relief for the first time on appeal.

Finally, we have thoroughly reviewed the record and do not find that structural error occurred in this case. *See, e.g.*, *Marchese v. Aebersold*, 530 S.W.3d 441 (Ky. 2017) (finding structural error when trial court should have recused for conducting independent investigation and obtaining extrajudicial information that resulted in explicit bias and antagonism toward party and issuance of DVO). Unlike the taking and weighing of evidence and entry of a DVO, the underlying order is one of summary judgment, which we review *de novo*, and our review is not tainted by any appearance of impartiality. Likewise, Christopher has a procedural mechanism pursuant to *Petzold* for retroactive vacatur of the underlying summary judgment order, which he could have used and may have obtained relief from the Trial Court's order had he used it. Christopher's failure to use the mechanisms available to him fall in line with cases in which we have found waiver of recusal issues, not structural error. *Compare*, *Bussell v. Commonwealth*, 882 S.W.2d 111 (Ky. 1994) (waived recusal issue because motion to recuse not timely made), *with Marchese*, *supra*.

## III. Issues relating to the summary judgment order.

We now turn to the substantive issues raised relating to the order granting summary judgment. Christopher claims: (1) the Patricks were not

entitled to specific performance because they were not prepared to close by the closing date; (2) there exists a genuine issue of material fact regarding whether time was of the essence in the contract; and (3) the order granting summary judgment lacks any citations to the record. We discuss each issue *seriatim*.

**A. Specific performance**.

Christopher first argues that the Trial Court erred by entering summary judgment and granting specific performance when the Patricks, allegedly, did not strictly comply with the terms of the purchase agreement. Christopher relies on the fact that the Patricks had not secured financing by the closing date to support his claim. Having thoroughly reviewed the underlying record, we find no such error.

CR 56.03 permits a trial court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When a trial court grants summary judgment, the standard of review on appeal is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996), CR 56.03. As "'summary judgment does not require findings of fact but only an examination

of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to the trial court's assessment of the record or its legal conclusions.'" *Foreman v. Auto Club Property-Casualty Insurance Company*, 617 S.W.3d 345, 349 (Ky. 2021) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)).

Furthermore, "specific performance of a contract is not granted as a matter of right, but is always addressed to the reasonable discretion of the court, to be exercised according to the facts of each case. The discretion, however, is not an arbitrary or capricious one." *West Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 314 (Ky. 1959). Indeed, the discretion is tilted, as in weighing the equities, the court must begin with an unbalanced scale. "It requires less strength of case on the side of the defendant to resist than it does on the part of the plaintiff to invoke the right of specific performance because if the court refuses to enforce specifically, the party is still left to his remedy at law." *Id*.

While weighing the equities of granting specific performance, a court must determine if the party requesting specific performance is "entirely free from fraud, illegal or inequitable conduct and . . . [the party has] strict[ly] compli[ed] with all terms of the contract[.]" *Nourse*, 320 S.W.2d at 314-15 (citing *Asher v. Asher*, 278 Ky. 802, 129 S.W.2d 552 (1939); *Miller v. Prater*, 267 Ky. 11, 100 S.W.2d 842 (1937); *Bluegrass Realty Co. v. Shelton*, 148 Ky. 666, 147 S.W. 33

(1912); and *Williamson v. Ingram*, 243 Ky. 749, 49 S.W.2d 1005 (1932)).  If there are breaches of the contract, the court must determine who was the first party to breach, because "a party who commits the first breach of a contract is deprived of the right to complain of a subsequent breach by the other party."  *Nourse*, 320 S.W.2d at 315.

Here, Christopher claims that the Patricks are not entitled to specific performance because they had not obtained financing by the closing date.  This argument is unavailing and does not create a genuine issue of material fact because it is clear from the record that the Patricks tried to obtain financing and were otherwise prohibited from doing so due to their appraiser not being able to access the inside of the residence.  Tracy Trimble (Trimble), the appraiser, testified in his deposition that "[t]he first request came in for an interior visit . . . I could not gain entry to the property so I couldn't complete the interior visit."  Trimble was later asked to conduct an exterior visit and draft an appraisal, which he did.  This testimony indicates that the Patricks were actively attempting to obtain the requisite financing and appraisals as required by the purchase agreement.

Moreover, Josh Brown, the buyer's agent, testified, "Financing could be completed by July 3rd very easily; it was not completed because of denial from access from Chris[topher]."  Mike Brown, the seller's agent, likewise testified that approximately two weeks before the closing date the appraiser attempted to get

into the house but "could not get in. . . . [F]inally, the lender just said do a[n] exterior, and that'll be fine. And he done that, and I don't know when that was completed." Christopher claims this evidence is inadmissible hearsay and could not be considered by the Trial Court.

This argument is unavailing. First, Christopher did not make this argument to the Trial Court for consideration, and it is axiomatic that a party cannot "feed one can of worms to the trial judge and another to the appellate court." *Sneed*, *supra*.

Furthermore, even had it been presented, there was no error because the testimony was not offered for the truth of any of the matters asserted, KRE[12] 801(c), namely proving any fact about Christopher. Rather, the testimony went to whether the Patricks had clean hands and complied with the terms of the contract. *Nourse*, *supra*. The uncontroverted deposition testimony shows that the Patricks complied with the terms of the purchase agreement and attempted to obtain the requisite appraisal and financing in a timely fashion. They sought to obtain financing, which led to Trimble being asked to conduct an appraisal. Trimble, however, was not able to enter the house to conduct the appraisal. In other words, the Patricks were "ready, able, and willing" to perform pursuant to the terms of the contract as they were actively seeking financing. *See Faulkner v. Denniston*, 250

---

[12] Kentucky Rules of Evidence.

Ky. 373, 63 S.W.2d 286, 288 (1933) ("It is also the general rule that a party seeking specific performance must show that he has performed or offered to perform or is ready, able, and willing to perform all the essential acts required by the contract.").

It is irrelevant who or what prohibited Trimble from conducting the appraisal, sufficing only that it was *not* the actions of the Patricks. Accordingly, there was no genuine issue of material fact regarding whether the Patricks had clean hands and were not the ones to breach the contract by complying and/or attempting to comply with the terms of the contract; thus, they were not precluded from seeking specific performance. *See, e.g.*, *Bennett*, 293 S.W.2d 879 (Ky. 1956) (upholding specific performance where party seeking financing did so in good faith and within a reasonable time after the contractual due date).

Additionally, it is uncontroverted that Christopher willfully breached the terms by refusing to convey the property to the Patricks by the agreed-to closing date; thus he is precluded from arguing that the Patricks are in breach. Christopher's Answer admits the allegations in Paragraph 7 of the Complaint, to wit, "That on or about July 3, 2020, [the Patricks] were informed by Defendant Christopher Lee Mays that he would not be selling the subject property due to protest by Elizabeth Grace Mays." Christopher also averred in his response to the

-24-

motion for summary judgment[13] that he "agrees that on the closing date, the Defendant [Christopher] informed the [Patricks] he would be unable to complete the closing on the property due to developments in his divorce, with official notice coming in the following days." It was Christopher, not the Patricks, who committed "the first breach of a contract" and thus was "deprived of the right to complain of a subsequent breach by the other party." *Nourse*, 320 S.W.2d at 315.

Accordingly, nothing about the Patricks' actions precluded the Trial Court from granting specific performance. The evidence in the record supported that they had clean hands and attempted to fulfill the terms of the contract. It is clear from the record that Christopher breached the terms of the purchase agreement. The motion having been properly supported, if Christopher wished to oppose the grant of summary judgment, he had to "present[] at least some affirmative evidence showing that there [was] a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). Christopher failed to proffer any record evidence to show a genuine issue of material fact. Accordingly, the Trial Court's order granting specific performance was not erroneous.

---

[13] This response was filed on April 23, 2021, in response to an earlier motion for summary judgment, which was granted. The Trial Court later vacated that order granting summary judgment as to Christopher.

**B. Time is of the essence**.

Next, Christopher argues that there was a genuine issue of material fact that should have precluded entry of summary judgment, namely, whether time was of the essence in the purchase agreement. As the argument goes, if time were of the essence regarding the closing date, then the Patricks' failure to obtain financing by this date rendered the contract void. The Trial Court found that the purchase agreement did not state that time was of the essence regarding the closing date. Additionally, the Trial Court found that Christopher had not presented any evidence that the closing date was vital to the terms of the contract. Having reviewed the record and the arguments on appeal, we find no error with the Trial Court's order.

This Commonwealth has long held that for time to be of the essence, the contract must expressly state the same:

> Ordinarily time is not of the essence of the contract, but it may be made so by express stipulations of the parties, or it may be so by implication, because of the nature of the property involved, or because of the avowed object of the seller or purchaser, or from the nature of the contract itself, or by one party giving the other notice that performance must be made within a certain reasonable time fixed in the notice.

*Browning v. Huff*, 204 Ky. 13, 263 S.W. 661, 662-63 (1924) (citations omitted).

We have reviewed the purchase agreement, and nothing within the four corners shows that time was of the essence. "Whether time is of the essence

of the contract 'is viewed from the standpoint of the parties as gathered from the contract involved, under the rule that unless the intention to make time of the essence is evidenced by expression, or implication, it may not be so regarded.'" *Farmers Bank and Trust Co. of Georgetown, Kentucky v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky. 2005) (quoting *Distillery Rectifying & Wine Workers International Union of America v. Brown-Forman Distillers Corp.*, 308 Ky. 380, 213 S.W.2d 610, 612-13 (1948)).

Without a doubt, the terms of the purchase agreement never specifically state that time was of the essence. The closing clause states as follows:

> 10. **CLOSING AND TITLE**: The closing shall occur on or before 07/03/2020. At closing an unencumbered marketable title to the property shall be conveyed to BUYER by deed of general warranty with the usual covenants such as any national title company shall insure, free and clear of all liens and encumbrances except (a) such liens and encumbrances as BUYER may specifically approve and (b) easements of record and all restrictions of record as to the use and improvements of the property. Should the title to the property appear defective, SELLER shall have 14 days after receipt of notice from BUYER of such defect or defects within which to correct same at the cost of the SELLER. Should SELLER be unable to correct the defect, this CONTRACT is voidable at option of BUYER and earnest money shall be refunded to BUYER. If the parties to this contract desire that any term of this agreement survive the closing and transfer of deed to BUYER, an agreement must be executed prior to closing acknowledging such an intent.

This clause never states that time was of the essence; in fact, no clause in the purchase agreement states that time is of the essence.

Because the four corners of the purchase agreement do not explicitly state that time is of the essence, "we must consider if an intention to make time of the essence may be implied from the words of the contract." *Farmers Bank*, 171 S.W.3d at 9. Here, the contract's terms imply that the closing date is not essential to the agreement. In fact, the purchase agreement explicitly permits additional time after the closing date should title to the property appear defective. Had Christopher delivered title to the Patricks that the Patricks believed to be defective, the purchase agreement would permit the Patricks to give notice of title defects to Christopher on or before the day of closing, which would have extended the closing date by 14 days to allow Christopher to cure such defects. Additionally, the specific language of the purchase agreement implies that even defective title delivered at closing is not essential even to the contract itself, as defective title renders the purchase agreement only "*voidable* at the option of BUYER" (emphasis added). Thus, by express and implied terms, time was not of the essence for the closing date.

Moreover, and as it relates to Christopher's argument that the Patricks had not obtained financing, we note that the financing provisions likewise did not

explicitly or implicitly indicate that time was of the essence. The purchase agreement stated in relevant part:

> BUYER agrees to apply for and lock in the above-mentioned loan within five (5) calendar days from the date of acceptance of this CONTRACT and shall proceed with due diligence to obtain financing. Should BUYER be unable to obtain financing, this CONTRACT shall be null and void, and the earnest money shall be refunded to Buyer [sic].

Other than a time limit on the application for financing, the Patricks were only responsible for proceeding "with due diligence" while seeking financing; there was no date specific. As shown above, all evidence proffered demonstrates that they were attempting to obtain the requisite appraisal for financing. Again, the express and implied terms of the purchase agreement support that time was not of the essence for the closing.

In strong contrast to the instant purchase agreement stands language in other contracts that was held to make time of the essence. *See, e.g.*, *Farmers Bank*, 171 S.W.3d at 9 ("If the loan is not closed by the specified closing date, this letter and the Bank's obligation to make a loan shall terminate without any further liability or obligation to the Bank."); *Distillery Rectifying*, 308 Ky. at 381, 213 S.W.2d at 611 ("This agreement shall be effective and shall remain in full force and effect from the date of its execution, May 1, 1945 to May 1, 1946, and during each year thereafter unless 90 days notice in writing is given by either party hereto

prior to the expiration date.");[14] *Asher v. Roberts*, 206 Ky. 186, 266 S.W. 1089, 1089 (1924) ("[I]t is agreed that the party of the first part doth hereby bind himself to make or cause to be made a deed of conveyance to party of the second part . . . provided, however, that party of the second part or any one for him pays . . . the sum of $500 within 12 months from the date of this contract.").

In the instant case, the purchase agreement contains no such termination, "full force and effect," or binding language as it relates to the closing date. Quite the opposite, the closing language includes a 14-day extension period for alleged title defects and specific language rendering the purchase agreement voidable, not automatically void, due to title defects. By its express terms, the purchase agreement made the closing date not of the essence.

And while Christopher now points to evidence in the depositions as parol evidence supporting his argument that time was of the essence, we again note that Christopher did not present these arguments to the Trial Court, and they are not properly before us. *Cf. Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) ("A new theory of error cannot be raised for the first time on appeal.").

---

[14] The Court interpreted this clause as being of the essence because, "[w]hile not expressed in exact words, it is to be gathered without difficulty that by strong implication the requirement of 90 days written notice was essential, because termination or continuation depended upon the required notice." *Id.* at 384, 213 S.W.2d at 613.

Christopher attempts to argue away his own deficiencies by claiming the Trial Court prohibited Christopher from responding to the motion for summary judgment by denying the motion to vacate. The failure to respond, however, was solely Christopher's. Prior to entering its order granting summary judgment the Trial Court did, in fact, give Christopher 30 days to respond to the summary judgment motion, which was as much time as Christopher had requested. Christopher failed to timely file a response. His argument on appeal is not availing.

Nonetheless, we have reviewed the depositions and find they do not alter the analysis. First, they are depositions of the realtors, not the parties, so they are of limited value as to the intentions of the parties at the time they made the contract. Second, though the realtors believed that the closing should have occurred on the date specified, they nonetheless agreed that closing dates are frequently amended for numerous reasons, including needing additional time for inspections and financing.

While "a new agreement between the parties extending the time is evidence that at the time of the making of the original contract time was regarded as of its essence[,]" *Browning*, 204 Ky. 13, 263 S.W. at 663 (citation omitted), in the instant case there was neither a new agreement extending the time nor an amendment to the purchase agreement extending the time. Additionally, the

-31-

realtor's testimony was not referring to the parties executing a "new agreement" but rather to executing an "addendum" to the purchase agreement, with testimony that such practice is common in residential real estate purchase agreements to permit parties to obtain financing, inspections, and the like. Because such an addendum or amendment to the purchase agreement is commonplace and anticipated prior to signing the purchase agreement, this parol evidence serves to bolster the fact that the parties did not intend the closing date to be essential to the contract's terms when they signed the purchase agreement.

Moreover, as has already been shown, it is apparent from the record that even if the Patricks had not obtained financing by the closing date, they were seeking to fulfill their terms of the contract in good faith. It is also apparent that Christopher was not going to fulfill the terms of the contract by the closing date. Such actions are sufficient to permit a trial court to grant specific performance, even if the Patricks needed a few more days to obtain financing. *Bennett*, 293 S.W.2d at 880 (upholding specific performance where "Appellee in good faith sought to consummate the contract within a reasonable time after the date specified"). Accordingly, the Trial Court's orders granting summary judgment and ordering specific performance are not erroneous on the grounds raised by Christopher.

### C. References or citations to the record.

Finally, Christopher argues that the Trial Court's order is erroneous because it does not contain references or citations to the record. Again, Christopher did not raise this issue below, and it is not properly before us. *Cf. Springer*, 998 S.W.2d at 446 ("A new theory of error cannot be raised for the first time on appeal."). More importantly, our appellate review of a summary judgment is a *de novo* review of the issues presented below as it "involves only legal questions and a determination of whether a disputed material issue of fact exists." *Phelps v. Bluegrass Hospitality Management, LLC*, 630 S.W.3d 623, 627 (Ky. 2021) (quoting *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017), and *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013)). Accordingly, as shown above, we have reviewed the order and the record below and find summary judgment was properly entered.

### CONCLUSION

This case involves one party's failure to fulfill its obligations pursuant to a residential, real estate purchase agreement while the other party was proceeding in good faith to fulfill its obligations. The Trial Court granted summary judgment and ordered specific performance. Neither of those decisions is erroneous. Accordingly, we AFFIRM the orders granting summary judgment and ordering specific performance.

ALL CONCUR.


BRIEFS FOR APPELLANT:            BRIEF FOR APPELLEES:

Joshua S. Harp                  Howard D. Stone
Frankfort, Kentucky          Owingsville, Kentucky